IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,400






HENRY W. SKINNER, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


GRAY COUNTY






 Price, J., delivered the opinion of the Court.


O P I N I O N 



 The appellant was convicted of capital murder and sentenced to death pursuant to
Texas Penal Code Section 19.03(a)(7)(A) and Texas Code of Criminal Procedure Article
37.071, Section 2(g). This Court affirmed the appellant's conviction on direct appeal. 
Skinner v. Texas, 956 S.W.2d 532 (Tex. Crim. App. 1997). The appellant filed a motion
with the trial court for DNA testing pursuant to Chapter 64 of the Texas Code of Criminal
Procedure. The trial court denied the motion but failed to enter determinations under
Article 64.03 of the Texas Code of Criminal Procedure. The appellant appealed the denial
of the motion to this Court. The motion was remanded to the trial court with directions to
enter an order containing the relevant Article 64.03 determinations. Then, the trial court
entered the order finding that the appellant did not satisfy the requirements of Article
64.03(a)(2)(A) and 64.03(a)(2)(B). (1) 

The appellant appeals the denial of the motion. The appellant asserts that the trial
court 1) erroneously denied his motion for DNA testing and 2) violated the principles of
appellate review by failing to provide meaningful Chapter 64 findings. We affirm. 

Facts

Around midnight on December 31, 1993, Twila Busby and her two sons, Elwin and
Randy Caler, were murdered in the home they shared with the appellant. The appellant was
found around 3 a.m. in the home of Andrea Reed, dressed in clothing that was covered in
the blood of two of the victims. The State collected evidence from the crime scene, the
autopsies of the victims, and the appellant's personal effects. This evidence included the
clothing worn by the appellant, blood evidence from the crime scene, fingerprints, a bloody
knife, a plastic bag containing a knife and what appeared to be a cup towel stained with a
blood-like substance, a bloody axe handle, a rape kit from the female victim, fingernail
clippings from the female victim, and hair evidence from the victims. 

The State did not subject all of this evidence to forensic testing. Although the State
tested the blood on the appellant's clothing, blood and hair from a blanket that partially
covered one of the victims, and hairs on one of the victim's back and cheeks, they did not
test the knives, axe handle, rape kit, fingernail clippings, or other hair samples. The State
also tested fingerprint evidence. The bloody palm prints in a bedroom where one of the
victims was killed and on doorknobs in the house matched the appellant's prints, but one set
of fingerprints on a bag containing one of the knives did not match those of the appellant. 

At trial, defense counsel presented the theory that the appellant was unconscious due
to intoxication when the murders were committed. Defense counsel further argued that the
prosecution failed to uphold its burden of proof beyond a reasonable doubt by not testing
pieces of evidence, including the alleged murder weapons, for DNA evidence. Defense
counsel also introduced a series of exculpating theories--evidence of the appellant's
intoxication level during the time of the murders, the appellant's hand injury, and another
potential perpetrator of the crime, Robert Donnell, a relative of the victims. The jury heard
expert testimony about the appellant's physical abilities on the night of the murders from a
toxicologist and from an occupational therapist who specialized in hand therapy. In
addition, the jury heard testimony that Donnell pursued Busby in the hours prior to the
murder, was known to carry a knife, and had been violent with women before. Finally, the
jury heard testimony about the State's failure to test each piece of evidence the appellant
now wishes to test.

Following the appellant's conviction, Professor David Protess from the Medill
School of Journalism at Northwestern University in Chicago urged the State to have the
items tested. The State sent much of the State's evidence to GeneScreen, a private
forensics lab in Dallas, for analysis. This testing was conducted before the enactment of
Chapter 64. (2) GeneScreen tested hair and fiber samples from Busby, hair from the axe
handle, and bloodstains from the crime scene. However, some evidence remained untested
and unreported. GeneScreen did not report tests of the fingernail clippings and rape kit,
though they were part of the evidence sent by the State. In addition, the State did not send
GeneScreen the two knives and the jacket with blood and hair, all recovered from the crime
scene. As a result, the appellant filed a motion to test the two knives found at the crime
scene, the cup towel containing what appeared to be a blood-like substance, the rape kit,
fingernail clippings from Busby, hair from the jacket recovered from the crime scene, and
fingerprint evidence from the plastic bag containing one of the knives. 

AnalysisThe appellant alleges that the trial court erred in determining that the appellant had
not met his burden under Article 64.03(a)(2)(A) and 64.03(a)(2)(B). Article
64.03(a)(2)(B) requires the appellant to demonstrate by a preponderance of the evidence
that the DNA testing request is not made to unreasonably delay the execution of his
sentence or the administration of justice. The appellant does not have a set date of
execution, and he has a federal habeas appeal pending. The testing could be conducted
before the appellant is assigned an execution date or appears on his federal habeas claim. In
this case, we find that the trial court's determination was an abuse of discretion that is not
supported by the record. Accordingly, we overrule the trial court's 64.03(a)(2)(B)
determination.

Article 64.03(a)(2)(A) requires the convicted individual to establish by a
preponderance of the evidence that a reasonable probability exists that he or she would not
have been prosecuted or convicted if exculpatory results had been obtained through DNA
testing. This court has interpreted that language as meaning a reasonable probability exists
that exculpatory DNA tests will prove a convicted individual's innocence. Kutzner v. State,
75 S.W.3d 427, 438 (Tex. Crim. App. 2002). We have reaffirmed the use of this standard
in other cases. See Bell v. State, 90 S.W.3d 301 (Tex. Crim. App. 2002); Rivera v. State,
89 S.W.3d 55 (Tex. Crim. App. 2002). After reviewing the evidence, we find that the
record supports the trial court's conclusion that the appellant failed to meet this standard. 

The appellant wishes to test DNA evidence from the two knives found at the scene,
the rape kit from Busby, the blood-like substance on a cup towel found at the scene, blood
from under Busby's fingernails, and hair and blood from a jacket found in the house. 
Assuming arguendo that each piece of evidence was to provide negative results for the
appellant, he still does not meet the Kutzner standard because DNA evidence from the
previous GeneScreen tests was inculpatory. 

Analysis of blood flakes found on a piece of hair collected from Busby's right hand
during the autopsy tested positive for a contribution of the appellant's DNA and Busby's
DNA. This analysis demonstrates the intermingling of the victim's and the appellant's DNA
during the time when she was struggling for her life. Because the appellant's DNA was
found mixed with Busby's DNA in her hand during the autopsy, there is nothing about the
other items found at the crime scene that, if linked to a third person, would cast doubt on
the appellant's presence at the scene of Busby's death or the appellant's involvement in the
offense. Given this evidence, the presence of a third party's DNA at the crime scene would
not constitute affirmative evidence of innocence. See Bell, 90 S.W.3d at 306. The
standard required by this Court to grant testing under Chapter 64 is affirmative evidence of
innocence. Kutzner, 75 S.W.3d at 438-439. Thus, the trial court properly concluded that
the appellant failed to meet the requirements of 64.03(a)(2)(A). 

As part of his 64.03(a)(2)(A) claim, the appellant further argues that the trial court
erred in not compelling: 1) the production of benchnotes (3) from the GeneScreen lab and 2)
the comparison of the fingerprint evidence collected from the trash bag containing one of
the potential murder weapons with the fingerprints of Donnell, another potential
perpetrator. 

In this case, personnel from the Tarrant County Medical Examiners office, Roche
Laboratories and GeneScreen may have prepared benchnotes. The appellant does not know
if such benchnotes exist, nor does he cite any authority for compelling this production. 
Instead, the appellant claims the GeneScreen reports are ambiguous. He urges this Court to
order production of the benchnotes for clarification. The four GeneScreen reports present
in the record clearly state the results from testing in a conclusion paragraph. Although the
reports do not chronicle tests for every piece of evidence, the report from October 2,
2000, states "Twila Busby and Henry Watkins Skinner are included as contributors to the
mixed profile from the hair from the right hand of Twila Busby." We think the report is
unambiguous, and without more, we will not compel the clinic to turn over its notes.

Additionally, the appellant argues that the trial court erred in not compelling the
State to compare the fingerprint (4) found on the black plastic bag with the known prints of the
other possible perpetrator defense counsel raised at trial, Donnell. (5) In Kutzner, this Court
said that the language and legislative history of 64.03(a)(2)(A) do not contemplate the trial
court's consideration of new post-trial information. Kutzner, 75 S.W.3d at 439. In
Kutzner, we assumed, without deciding, that Article 64.03(a)(2)(A) would allow the trial
court to consider new information. Ibid. We concluded that the new information that
Kutzner provided in his motion for DNA testing did not undermine the trial court's
64.03(a)(2)(A) finding because ample evidence existed in the record that defeated the
claim that a reasonable probability existed that Kutzner would not have been prosecuted or
convicted if the DNA results were exculpatory. Similarly, the appellant's request to
compare the fingerprint evidence would not provide a reasonable probability of the
appellant's innocence, but instead would only demonstrate the presence of a third party. As
such, the new information would not undermine the trial court's 64.03(a)(2)(A) finding. 
Therefore, the trial court was correct in denying the appellant's request for fingerprint
testing.

Finally, the appellant contends that the trial court's failure to provide specific
findings undermines the structure of the statute. The trial judge denied the appellant's
Chapter 64 motion and found that the appellant failed to meet the standards required by
64.03(a)(2)(A) and 64.03(a)(2)(B). Although the trial court should provide determinations
under the statute, this court has de novo review of application-of-law-to-fact issues that do
not depend on the credibility and demeanor of witnesses. Rivera v. State, 89 S.W.3d 55,
59 (Tex. Crim. App. 2002). 

Article 64.03(a)(2)(A) requires a petitioner to demonstrate, by a preponderance of
the evidence, that a reasonable probability exists that he or she would not have been
prosecuted or convicted if exculpatory results were obtained through DNA testing. This
Court has interpreted 64.03(a)(2)(A) to require a reasonable probability that exculpatory
DNA tests would prove the petitioner's innocence. Kutzner, 75 S.W.3d at 439. This Court
further established that, "[T]he ultimate question of whether a reasonable probability exists
that exculpatory DNA tests would prove innocence is an application-of-law-to-fact
question that does not turn on credibility and demeanor and is therefore reviewed de novo." 
Rivera, 89 S.W.3d at 59. Similarly, the Article 64.03(a)(2)(B) question of whether the
request for DNA testing is made to unreasonably delay the execution of sentencing or the
administration of justice is an application-of-law-to-fact question and is therefore given de
novo review. 

The trial court's findings, when considered with the record in this case, are
sufficient for the purposes of our review. (6) The trial court found that the appellant failed to
meet the requirements of 64.03(a)(2)(A) and 64.03(a)(2)(B). This may not be adequate in
every case, and this Court would appreciate more detailed findings from the trial court to
facilitate our review. But, in appellant's case, the record supports the trial court's
conclusion that the appellant did not prove by a preponderance of the evidence that a
reasonable probability existed that he would not have been prosecuted or convicted if the
DNA test results were exculpatory. 

Because we find the appellant failed to meet the burden under Article
64.03(a)(2)(A), we affirm the trial court's decision to deny the motion for testing under
Chapter 64.


Delivered: September 10, 2003.

Publish.
1. Although appellant invokes the statutory language of Article 64.01 in his brief, the trial court
did not enter any findings regarding Article 64.01. As a result, we presume the trial court found that
appellant met that article. Therefore, there is no adverse finding to appeal under Article 64.01.
2. Chapter 64 was signed into law in April of 2001. The District Attorney sent forensic
evidence to GeneScreen for testing in July of 2000.
3. Laboratory technicians create benchnotes, which thoroughly track the collection, testing, and
handling of the evidence. In addition, benchnotes may contain the technician's preliminary notes and
findings. The amount of detail provided in the notes vary amongst the labs, but the information
contained within them is used to create the final lab report.
4. Chapter 64 deals with the testing of forensic DNA evidence. Fingerprint evidence is not
covered.
5. Although Donnell is now deceased, his prints are on file due to his criminal record. 
6. The appellant's request for DNA testing under Chapter 64 includes affidavits from two trial
witnesses that do turn on credibility and demeanor and therefore should be determined by the trial
court. The trial court did not make a determination on the credibility of these affidavits. Because the
inculpatory GeneScreen testing precludes the appellant from meeting the Kutzner standard, the trial
court's findings on the affidavits are immaterial to the resolution of appellant's Article 64.03(a)(2)(A)
claim. Even if the trial court found the affidavits to be compelling, the appellant fails to surpass the
Kutzner standard of affirmative evidence of innocence.