Affirmed and Memorandum Opinion filed March 16, 2004









Affirmed and Memorandum Opinion filed March 16, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00769-CR

____________

 

CHARLES
IRELAND, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th District
Court 

Harris County,
Texas

Trial Court Cause No.
516,028

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from the denial of
appellant=s post-conviction motion for DNA testing
under Chapter 64 of the Texas Code of Criminal Procedure.  Appellant brings one issue challenging the
trial court=s finding that he failed to establish, by
a preponderance of the evidence, that a reasonable probability exists that he
would not have been prosecuted or convicted if exculpatory results had been
obtained through DNA testing.  We affirm.

 








Background

On June 18, 2001, appellant filed a
post-conviction motion for DNA testing alleging that at the time of his 1989
trial and conviction for aggravated sexual assault of a child, the State
possessed DNA samples that were never analyzed, and he requested the trial
court order the State to produce the evidence for testing pursuant to article
64.02(2)(B) of the Texas Code of Criminal Procedure.[1]  The trial court appointed counsel to
represent appellant.  See Tex. Code Crim. Proc. Ann. art.
64.01(c) (Vernon Supp. 2004).  The State
responded to appellant=s motion and provided affidavits and
supporting documentation concerning the condition of the evidence.  The trial court made a finding that appellant
failed to establish, by a preponderance of the evidence, that a reasonable
probability exists that he would not have been prosecuted or convicted if
exculpatory results had been obtained through DNA testing.  See Act of April 5, 2001, 77th Leg. R.S., ch. 2, ' 2, 2001 Tex. Gen.
Laws 2 (amended 2003) (current version at
Tex. Code Crim. Proc. Ann. Art. 64.03(a)(2)(A) (Vernon Supp. 2004)).
Accordingly, the court denied testing by written order containing its findings
and conclusions signed May 23, 2003. 
Appellant filed a timely, written notice of appeal.  

Standard of Review and Applicable Law

We review a trial court=s decision to deny
a motion for post-conviction DNA testing under a bifurcated standard of review.
 Rivera v. State, 89 S.W.3d 55, 59
(Tex. Crim. App. 2002).  Accordingly, we
afford almost total deference to the trial court=s determination of
issues of historical fact and the application of law to the fact issues that
turn on an evaluation of credibility and demeanor.  Id.  However, we review de novo the ultimate
question of whether the trial court was required to grant
a motion for DNA testing under Chapter 64 of the Texas Code of Criminal
Procedure.  See id.








The trial court is entitled to make its
determination based solely upon appellant=s motion and supporting
affidavit.  Rivera, 89 S.W.3d at
58-59.  Appellant bears the burden of
production or persuasion at each stage under Chapter 64.  Murphy v. State, 111 S.W.3d 846, 849
(Tex. App.CDallas 2003, no pet.). 

Before post-conviction DNA testing may be
ordered, certain criteria set forth in the statute must be established:

(a) 
A convicting court may order forensic DNA testing under this chapter
only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a
condition making DNA testing possible; 
and

(ii) has been subjected to a chain
of custody sufficient to establish that it has not been substituted, tampered
with, replaced, or altered in any material respect;  and

(B) identity was or is an issue in
the case;  and

(2) the convicted person
establishes by a preponderance of the evidence that:

(A) a reasonable probability exists
that the person would not have been prosecuted or convicted if exculpatory
results had been obtained through DNA testing; 
and

(B) the request for the proposed
DNA testing is not made to unreasonably delay the execution of sentence or
administration of justice.








Act of April 5, 2001, 77th Leg. R.S., ch. 2, ' 2, 2001 Tex. Gen.
Laws 2 (amended 2003) (current version at
Tex. Code Crim. Proc. Ann. Art. 64.03(a) (Vernon Supp. 2004)).[2]  By its explicit terms, Chapter 64 does not
require the trial court to grant a request for DNA testing unless the statutory
preconditions are met.  Bell v. State,
90 S.W.3d 301, 306 (Tex. Crim. App. 2002).

Discussion

In his sole issue, appellant asserts the
trial court erred in finding that appellant failed to establish, by a
preponderance of the evidence, that a reasonable probability exists that he
would not have been prosecuted or convicted if exculpatory results had been
obtained through DNA testing.  See
Tex. Code Crim. Proc. Ann. Art.
64.03(a)(2)(A).  The Texas Court of Criminal Appeals has
interpreted this part of the statute Ato mean a reasonable probability
exits that exculpatory DNA tests will prove a convicted person=s innocence.@ 
Kutzner v. State, 75 S.W.3d 427, 438 (Tex. Crim. App. 2002).  

The trial court found that evidence relating to the offense,
including hairs, a t-shirt,  a blood
sample, and a sheet, are still in existence.[3]  There was no finding that any of these items
are in a condition making DNA testing possible. 
See Tex. Code Crim. Proc.
Ann. art. 64.03(a)(1)(A)(i).  

Assuming arguendo that DNA test results might create
an exculpatory inference, such an inference does not necessarily conclusively
outweigh other evidence establishing appellant=s guilt.  See Rivera, 89 S.W.2d at 60 (holding
absence of DNA under defendant=s fingernails and negative result from rape kit would not
indicate innocence of capital murder). 
In some cases, exculpatory post-conviction DNA test results could Amerely muddy the waters.@ 
See Kutzner, 75 S.W.3d at 439 (recognizing the Act=s legislative history shows it
was  meant to Aensure that a favorable [DNA] test
would show that an inmate is innocent, not merely muddy the waters in the case@).








Any exculpatory inference that might be revealed by the DNA
testing sought in this case would not outweigh the evidence of appellant=s guilt.  The evidence at trial was that appellant was
apprehended by citizens a few blocks from the crime scene after several people
saw him coming out of the complainant=s bedroom window.  We give almost total deference to the
trial court=s determination issues of historical fact
and credibility.  See Rivera,
89 S.W.3d at 59.

Appellant sought testing of hairs found on the complainant=s bed sheet.  The evidence at trial showed that three
children, including the complainant, slept in the bedroom.  The complainant=s babysitter also spent considerable
time in the home.  There was testimony
that the babysitter may have had sex with another man in the home, perhaps in
the same bed.  The family cat lived in
the home as well.  Furthermore, evidence
introduced at trial demonstrated the complainant, her siblings, and her mother
lived in a filthy home, littered with trash and clutter.  Accordingly, it is not unlikely that hair
found on the bed would belong to someone other than complainant or
appellant.  

Appellant also sought testing of hairs recovered from the
shirt he wore when arrested.  Testimony
at trial indicated that when appellant was apprehended shortly after the
incident, he was wearing a t-shirt with several hairs on it.  Houston Police Department lab personnel examined
the hairs and found they were consistent with cat hair, dog hair, appellant=s own hair, and other hair found in
the complainant=s bedroom.  Thus, the
absence of the complainant=s hair would not establish innocence.








Finally, appellant sought testing of what appears to be a
blood stain on his t-shirt.  At trial
Houston Police Department lab personnel testified that there was not enough
blood present in the stain to determine even a type, and the blood could have
come from anywhere.  Appellant was a day
laborer who was described at trial as, on the evening of the offense, clothed
in a pair of Agreasy@ pants, a Agreasy@ shirt, and Agreasy@ shoes.  Appellant=s wife testified that the blood was
appellant=s, caused by a cut on his finger
earlier that day.  Thus, it is entirely
possible the blood on the shirt would not be consistent with complainant=s blood, and any exculpatory
inference from DNA testing would do no more than Amuddy the waters.@ 
See Kutzner, 75 S.W.3d at 439. 

Therefore, the absence of the victim=s blood on appellant=s clothing and identification of the
hairs recovered from the sheet and appellant=s shirt would not prove appellant=s innocence.  The trial court did not err in denying DNA
testing because appellant failed to prove, by a preponderance of the evidence,
that a reasonable probability exists that he would not have been prosecuted or
convicted if exculpatory DNA results had been obtained.  We overrule appellant=s sole issue.

Accordingly, the judgment of the trial
court is affirmed.

 

PER CURIAM

 

Judgment
rendered and Memorandum Opinion filed March 16, 2004.

Panel consists
of Chief Justice Hedges and Justices Frost and Guzman.  

Do Not Publish C Tex. R.
App. P. 47.2(b).











[1]  This court
affirmed appellant=s conviction.  See
Ireland v. State, No. 14-89-00098-CR (Tex. App.CHouston [14th Dist.] Feb. 1, 1990, pet. ref=d) (not designated for publication).





[2]  The 2003
amendment to article 64.03(a)(2)(A) applies to motions filed on or after
September 1, 2003, and is inapplicable here. 
All further references will be to the version in effect at the time
appellant filed his motion.





[3]  Despite
references in appellant=s brief, our record contains no evidence that any
semen from the  bed sheet exists.  The record indicates that all semen from the
bed sheet was used in previous testing.