COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RAYMOND LANG,                                             )

                                                                              )              
No.  08-02-00292-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
194th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-8894072-RM)

                                                                              )

 

 

O
P I N I O N

 

Raymond Lang
appeals the trial court=s
order denying his motion for post-conviction forensic DNA testing.  In his sole issue for review, Appellant
contends the trial court erred in denying his Chapter 64 DNA motion because a
reasonable probability exists that DNA tests would prove his innocence.  We affirm.

In 1988, a jury
convicted Appellant of aggravated sexual assault and sentenced him to 50 years= imprisonment.  In 1989, the Dallas Court of Appeals affirmed
Appellant=s
conviction.  See Lang v. State,
No. 05-88-00749-CR (Tex.App.--Dallas June 20, 1989, pet. ref=d)(not designated for publication).








On August 6, 2001,
Appellant filed a motion for post-conviction forensic DNA testing pursuant to
Chapter 64 of the Texas Code of Criminal Procedure.  In his motion, Appellant does not specify
what items of physical evidence he wished to have DNA testing performed.  After a hearing on Appellant=s motion on May 31, 2002, the trial
court denied the testing by a written order which also contained its findings
and conclusions.  The trial court found
that the Southern Institute for Forensic Science (SWIFS) records reflect that
SWIFS is currently in possession of the vaginal swab and vaginal smear, the
pubic combings, and a portion of the skirt worn by M.R. on the night of the
assault.  SWIFS records further reflect
that it is no longer in possession of the oral swab, oral smear, and blood
sample.  The court found that of the
above mentioned items of physical evidence, the vaginal swab and vaginal smear
were found to contain sufficient seminal fluid to support further testing for
genetic markers.  The skirt was found to
contain insufficient amounts of seminal fluid to support further testing.  The oral swab and smear tested negative for
the presence of seminal fluid.  The pubic
hairs were found to match M.R.=s.  Further testing of the vaginal swab and
vaginal smear for genetic markers proved inconclusive.  Appellant was neither included nor excluded
as a possible contributor of the seminal fluid found on the vaginal smear and
vaginal swab.  The trial court concluded
that Appellant failed to meet his burden under the statute to show by a
preponderance of the evidence that an exculpatory result obtained from DNA
testing would have resulted in him not being prosecuted or convicted.  It also concluded that the evidence at trial,
both direct and circumstantial, strongly supported the jury=s finding of guilt beyond a reasonable
doubt.  Appellant timely filed a notice
of appeal.

Standard of Review and Applicable Law








We review a trial
court=s decision
to deny a motion for post-conviction DNA testing under a bifurcated standard of
review.  Rivera v. State, 89
S.W.3d 55, 59 (Tex.Crim.App. 2002).  That
is, we afford almost total deference to a trial court=s
determination of issues of historical fact and application-of-law-to-fact
issues that turn on credibility and demeanor while we review de novo
other application-of-law-to-fact issues. 
Rivera, 89 S.W.3d at 59. 
The ultimate question of whether a reasonable probability exists that
exculpatory DNA tests would prove innocence is an application-of-law-to-fact
issue which does not turn on credibility and demeanor and is therefore reviewed
de novo.  Id.

A convicted person
may submit a motion for post-conviction DNA testing of evidence containing
biological material to the trial court in which he was convicted.  Tex.Code
Crim.Proc.Ann. art. 64.01(a)(Vernon Supp. 2004).  The motion must be accompanied by an
affidavit, sworn to by the convicted person, and containing statements of fact
in support of the motion.  Tex.Code Crim.Proc.Ann. art.
64.01(a).  Although anyone may request
DNA testing, the court must order testing only if the statutory preconditions
are met.  Bell v. State, 90 S.W.3d
301, 306 (Tex.Crim.App. 2002).

Article 64.03 of
the Code of Criminal Procedure provides, in pertinent part:

(a)        A convicting court may order
forensic DNA testing under this chapter only if:

 

(1)        the court finds that:

 

(A)       the evidence:

 

(i)         still exists and is in a condition
making DNA testing possible; and

 

(ii)        has been subjected to a chain of custody
sufficient to establish that it has not been substituted, tampered with,
replaced, or altered in any material respect; and

 

(B)       identity was or is an issue in the case;
and

 








(2)        the convicted person establishes by a
preponderance of the evidence that:

 

(A)       the person would not have been convicted
if exculpatory results had been obtained through DNA testing; and

 

(B)       the request for the proposed DNA testing
is not made to unreasonably delay the execution of sentence or administration
of justice.

 

Tex.Code
Crim.Proc.Ann. art. 64.03(a).

Therefore, in
order to obtain DNA testing, an applicant must establish by a preponderance of
the evidence that a reasonable probability exists that he would not have been
prosecuted or convicted if exculpatory results had been obtained through DNA
testing.  Tex.Code Crim.Proc.Ann. art. 64.03(a)(2)(A).  The Court of Criminal Appeals has interpreted
this to mean that an applicant must show Aa
reasonable probability exists that exculpatory DNA tests will prove [his]
innocence.@  Kutzner v. State, 75 S.W.3d 427, 438
(Tex.Crim.App. 2002).  The showing has
not been made if exculpatory test results would Amerely
muddy the waters.@  Rivera, 89 S.W.3d at 59.  If the Appellant makes the required showing,
the court may order DNA testing only if it finds that identity was or is an
issue in the case, the evidence still exists and is in a testable condition,
and the chain of custody of the evidence is sufficient to establish the
evidence has not been tampered with, replaced, or altered in any material
respect.  Tex.Code Crim.Proc.Ann. art. 64.03(a).








In this case, the
complainant, M.R., testified at trial that on or about January 31, 1988, at
around 9:30 p.m. she was walking past a gas station when codefendant, Rickey
Thompson and one of his friends asked her if she wanted to go Ariding around@
with them.  M.R. did not know any of
these men.  However, she accepted and got
into Thompson=s car
while Appellant and some of his friends followed behind in another car.  They drove to South Dallas where Thompson and
Appellant were presumed to have gotten some drugs.  Afterwards, Appellant got in the car with
Thompson and M.R. while the rest of their friends got into the second car and
drove off.  M.R. told both men that she
wanted to go home.  They ignored her and
drove off to several other places.

Eventually, at
around 1 a.m., they decided to go to Mountain Creek Lake.  Shortly after arriving, Appellant got out of
the car and held the door shut to keep M.R. from escaping while Thompson raped
her.  When Thompson was finished,
Appellant pulled M.R. out of the car and asked Thompson if he could Acut her up,@
but he did not let him.  Instead,
Thompson put her back into the car and attempted to anally rape her.  Appellant then got in the car and raped her
while Thompson forced her to perform oral sex.

After being
repeatedly raped, M.R. told Thompson and Appellant that she had to use the
bathroom.  Thompson took her outside and
forced her to perform oral sex while she was urinating.  By forcing herself to have a bowel movement,
M.R. convinced Thompson to briefly let go of her.  M.R. then started to run towards a nearby
toll bridge but was caught by Thompson who proceeded to punch her and choke
her.  M.R. was able to escape again when
Thompson hesitated for a while when he was chocking her.  M.R. then ran to a nearby road where a
motorist took her to the toll bridge and the attendant called the police.








M.R. described the
incident to the police and took them to the location where the sexual assaults
had taken place.  When they arrived,
Appellant and Thompson were still at the scene because their car was stuck in a
ditch.  M.R. identified Appellant and
Thompson as the men that had raped her; and the police proceeded to arrest
them.  The police searched the area and
found M.R.=s
underwear, keys, cigarettes, and shoes in the area where she had lost them some
time during the struggle.

Caroline Van
Winkle, a forensic serologist at the Institute of Forensic Sciences in Dallas,
testified she received a rape kit including a vaginal swab, a vaginal smear, an
oral swab, oral smear, blood sample, and pubic hair samples from the
complainant in this case.  At a later
date, Van Winkle received clothing including a skirt.  With the swabs and clothing, Van Winkle
performed a test for acid phosphatase that would indicate the presence of
seminal fluid.  The analysis of the
evidence revealed the presence of spermatozoa on the vaginal swab, the vaginal
smear, and the skirt.  The oral swab and
oral smear tested negative for the presence of seminal fluid.  The pubic hairs were analyzed and found to
match M.R.=s.  The vaginal swab and vaginal smear were
subjected to further DNA testing to determine the presence of genetic
markers.  However, the skirt was
determined to contain insufficient seminal fluid to support further testing.  Testing of the spermatozoa from the vaginal
swab and vaginal smear was inconclusive because it indicated that the donor was
from a Ablood
group O, from a O secretor.@  M.R.=s
blood is of the same type; therefore, the identity of the donor could not be
determined from the sample.








Appellant argues
that he established that a reasonable probability exists that exculpatory
results through DNA tests would prove his innocence.  Specifically, he argues that the record of
his trial conclusively establishes that the only controverted issue was the
element of identity and that the conviction was obtained through the testimony
of the complaining witness who testified that Appellant and codefendant, Ricky
Thompson, took turns in raping her.  He
asserts that M.R.=s
testimony can be discredited through the DNA testing that could show a set of
circumstances which would eliminate his guilt. 
He argues that the test could show that the seminal fluid found in M.R.=s rape exam is codefendant Thompson=s, and not Appellant=s or that it is from neither of them.

Even assuming that
DNA test results might create an exculpatory inference, such an inference does
not necessarily conclusively outweigh other evidence establishing Appellant=s guilt.  See Rivera, 89 S.W.3d at
60.  In some cases, exculpatory
post-conviction DNA test results would Amerely
muddy the waters.@  See Kutzner, 75 S.W.3d at 439 (no
reasonable probability of innocence where test results would Amerely muddy the waters@). 
Here, there is overwhelming direct and circumstantial evidence that
establishes Appellant=s
guilt; therefore, any exculpatory inference that might be revealed by the DNA
testing sought in this case would not outweigh the evidence of Appellant=s guilt.  See Thompson v. State, 95 S.W.3d 469,
472 (Tex.App.--Houston [1st Dist.] 2002, pet. ref=d)(no
reasonable probability of innocence where weapon failed to contain complainant=s blood because such evidence could be
outweighed by other competent evidence). 
M.R. provided unequivocal eyewitness testimony in which she identified
Appellant as one of the men who sexually assaulted her.  Dallas Police Officer Kenneth Weaver
testified that he found Appellant and his accomplice at the location where M.R.
said the assault occurred.  Dallas Police
Detective Fred Milligan testified that several items belonging to M.R. were
found in the area immediately surrounding where Appellant and Thompson were
found.  The testimony of Dr. Victor
Robert Klein, the doctor who performed the rape examination on the night of the
assaults, established that M.R. had suffered injuries to her head and neck.  Therefore, it can be concluded that Appellant=s identity was not at issue.  See Tex.Code
Crim.Proc.Ann. art. 64.03(a)(1)(B).








In addition,
evidence at trial established that there were two assailants.  Appellant was not the only potential
contributor of the seminal fluid found on the vaginal swab and smear.  Therefore, assuming that further DNA testing
could show that the seminal fluid was deposited by Thompson and not Appellant,
this still does not prove that Appellant is innocent.  See e.g. Kutzner, 75 S.W.3d at 439; Rivera,
89 S.W.3d at 56 (no reasonable probability of innocence where there is absence
of DNA under an Appellant=s
fingernails and a negative result from a victim=s
rape kit).  While the presence of
Appellant=s seminal
fluid on the vaginal swab, vaginal smear, and skirt could indicate guilt, the
absence of such DNA would not indicate innocence because the evidence of his
guilt remains overwhelming.  See
Kutzner, 75 S.W.3d at 439.

When measured
against this legal standard, we cannot say that the convicting court
erroneously determined that Appellant failed to establish the Article
64.03(a)(2)(A) requirements by a preponderance of the evidence.  See Tex.Code
Crim.Proc.Ann. art. 64.03(a).  No
reasonable probability exists that exculpatory DNA tests on the evidence for
which Appellant seeks DNA testing would prove Appellant=s
innocence.  See Tex.Code Crim.Proc.Ann. art.
64.03(a)(2)(A).  At most, exculpatory DNA
tests on this evidence would Amerely
muddy the waters.@  See Rivera, 89 S.W.3d at
59.  We overrule Appellant=s sole issue and affirm the trial court=s order.

 

 

 

August
19, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)