Jose Alfredo **RIVERA**, Appellant,

v.

The **STATE** of Texas.

No. 74,359.

Court of Criminal Appeals of Texas.

Nov. 6, 2002.

David K. Sergi, San Marcos, for Appellant.

John A. Olson, Assistant District Attorney, Brownsville, Matthew Paul, State's Attorney, Austin, for State

## *OPINION*

KELLER, P.J. delivered the unanimous opinion of the Court.

Appellant was convicted of capital murder—murder in the course of aggravated sexual assault [1]—and sentenced to death. His direct appeal was affirmed and his application for writ of habeas corpus was denied. Subsequently, appellant filed an application for DNA testing under Chapter 64.[2] The trial court heard argument on

---

1. *See* TEX. PEN. CODE § 19.03(a)(2).

2. *See* TEX. CODE CRIM. PROC., Art. 64.01, et. seq.

the motion and denied the application without an evidentiary hearing and this appeal followed. Appellant now contends that he is entitled to DNA testing or, in the alternative, to an evidentiary hearing with live witnesses to determine whether he is entitled to DNA testing. We shall affirm.

## A. Background

### 1. Events leading to trial

The victim, a three-year-old child, was last seen alive on July 9, 1993, with Veronica Zavala. The next day, the child's naked body was found floating in a reservoir. Dr. Marguerite DeWitt, a pathologist, testified that the child had been in the water for eighteen to thirty-six hours but did not drown. Instead, the cause of death was ligature strangulation. DeWitt further testified to observing two tears in the child's anus. She concluded that these tears were due to an external penetration by something larger than the anal opening and were consistent with an adult's finger penetrating the anus. That same day (July 10th), Zavala confessed to being involved in the murder and implicated appellant.

On July 11th appellant gave a videotaped oral confession, in which he admitted to strangling the child and to penetrating the child's rectum with a finger. In addition to the strangulation and the damage to the child's anus, several other details of appellant's confession were corroborated by independent evidence:

the child's underwear had been cut off and tied around his neck with a single knot; the time of death was consistent with the time stated by appellant; the child had been wearing shorts and ten-

nis shoes when he disappeared; and the child's body was found near a bridge.[3]

### 2. Subsequent events

On October 12, 1999, the prosecutor's office received a typewritten letter purportedly written by Zavala. In the letter, Zavala claimed that she had falsely accused appellant—that appellant was not present when the child was killed and had nothing to do with the crime. Zavala claimed sole responsibility for the murder, but also said that she did not sexually assault the child.

Appellant has executed an affidavit in support of his motion for DNA testing. In the affidavit, he states that he is innocent of the crime and that he was "beaten and coerced" into making his videotaped confession. This coerced confession claim was not raised on direct appeal or in his application for writ of habeas corpus under Article 11.071 of the Texas Code of Criminal Procedure.

In an affidavit, one of the defense attorneys quoted what is allegedly an excerpt from a deposition of Dr. Raul Garza. In that excerpt, Dr. Garza opined that placing a finger in the anus of another human being would result in the shedding of skin cells from which a DNA analysis could be made.

At the hearing on the motion for DNA testing, the prosecuting attorney said that, after conducting an investigation, he had determined that neither the police department nor the prosecutor's office possessed any biological material related to the case. The prosecutor further remarked that all the existing biological material was in the possession of the trial court. Although defense counsel claimed that the State pos-

---

**3.** *Rivera v. State*, No. 71,916, slip op. at 13 (Tex.Crim.App., March 6, 1996) (unpublished).

sessed test results that had not been turned over to the defense, defense counsel did not controvert the prosecutor's assertion regarding who currently possessed the relevant biological material.

### 3. The trial court's findings[4]

The trial court found appellant's confession to be compelling and credible evidence of guilt that was corroborated by other evidence. Further, the trial court found Zavala's recanting statement to be "not credible and no evidence of innocence." The trial court concluded that appellant was not entitled to DNA testing.

### 4. Appellant's claims

Appellant contends that he is entitled to DNA testing on the following items: (1) fingernail clippings taken from appellant, (2) a rape kit taken from Zavala,[5] and (3) any samples taken from the victim's anus.[6] He argues that a negative test result— showing that his DNA is not present in the rape kit and any anal samples and that the child victim's DNA is not present in the fingernail clippings—would tend to show his innocence, especially in light of Zavala's recantation and his own allegation that authorities coerced his confession. He also contends that our opinion in *Keeter v. State*[7] requires the trial court to hear Za-

vala's live testimony in order to determine her credibility.

## B. ANALYSIS

### 1. Hearing

We first address appellant's claim that he is entitled to an evidentiary hearing in which the trial court would hear Zavala's live testimony. We initially note that *Keeter* is not relevant to the question at hand. That case involved a motion for new trial under the rules of appellate procedure, not a motion for DNA testing under Chapter 64.[8] Further, the case did not concern when and whether a party was entitled to a live hearing but simply addressed whether the trial court was within its discretion to deny the motion based upon the evidence before it.[9]

To determine whether appellant was entitled to a hearing with live witnesses, we must examine Chapter 64. In interpreting a statute, we are limited to its plain meaning unless the language is ambiguous or its plain meaning leads to absurd results that the Legislature could not possibly have intended.[10] Nothing in Article 64.03 requires a hearing of any sort concerning the trial court's determination of whether a defendant is entitled to DNA

---

**4.** We summarize and include only those findings relevant to the current appeal.

**5.** Although appellant claimed in his videotaped confession that he and Zavala had consensual sex during the events leading to the child victim's death, Zavala claimed in many of her statements that appellant sexually assaulted her. *See Zavala v. State*, 956 S.W.2d 715, 721–722 (Tex.App.-Corpus Christi 1997, no pet.).

**6.** The request for samples from the victim's anus does not appear in appellant's brief but was advanced before this Court in oral argument. In that regard, defense counsel maintained that appellant was not requesting that

the child's body be exhumed but was only requesting any samples that might have previously been taken from the child's anus.

**7.** 74 S.W.3d 31 (Tex.Crim.App.2002).

**8.** *Keeter, supra.*

**9.** *Id.* And in fact, the current rules do not require the trial court to take live testimony, but simply provide that "The court may receive evidence by affidavit or otherwise." TEX. R. APP. P. 21.7.

**10.** *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

testing.[11] By contrast, the Legislature did provide for a hearing under Article 64.04 after a convicted person has obtained DNA testing under Article 64.03.[12] Had the Legislature intended to require a pre-test hearing for the purpose of resolving issues under Article 64.03, it could have so specified in the statute—just as it did for a post-test hearing under Article 64.04. Nor do we find the failure to require a pre-test hearing to be an absurd result. The Legislature could have believed that any evidentiary issues arising under Article 64.03 could be resolved by affidavits, which could be submitted by the convicted person along with his motion. On the other hand, a convicted person would not have prior access to any test results generated under Article 64.04; so, the Legislature provided for a hearing, to give the parties a forum to submit evidentiary matters relating to the test results. We conclude that appellant was not entitled to a hearing under Article 64.03.

### 2. Testing

■ To obtain DNA testing under Chapter 64, several requirements must be met.[13] We find two of those requirements to be relevant here: (1) "the evidence … still exists and is in a condition making DNA testing possible," and (2) "the convicted person establishes by a preponderance of the evidence that … a reasonable probability exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained

through DNA testing." [14] The latter requirement entails that "convicted persons show … a reasonable probability exists that exculpatory DNA tests would prove their innocence." [15] That showing has not been made if exculpatory test results would "merely muddy the waters." [16]

■ In reviewing the trial court's decision, we employ the familiar bifurcated standard of review articulated in *Guzman v. State:* we afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues.[17] Under this standard, the following issues are reviewed with deference to the trial court's findings: (1) the credibility of Zavala's recantation, (2) the credibility of appellant's affidavit claiming that officers physically beat him into confessing, and (3) whether the claimed DNA evidence exists and is in a condition to be tested. Although there may be subsidiary fact issues that are reviewed deferentially, the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed *de novo.* We now turn to appellant's claims.

■ The State concedes the existence of fingernail clippings and a rape kit,[18] but

---

11. *See* Art. 64.03, *passim.*

12. *See* Art. 64.04.

13. *See* Art. 64.03(a).

14. Art. 64.03(a)(1)(A)(i) & (2)(A).

15. *Kutzner v. State,* 75 S.W.3d 427, 439 (Tex. Crim.App.2002).

16. *Id.*

17. 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

18. The State contends that appellant has not proven that the rape kit includes anal samples and therefore DNA testing of the kit could not be used to disprove appellant's statement in his confession that he had anal sex with Zavala. Resolution of this issue is unnecessary to the disposition of the case; we will assume

does not concede the existence of samples taken from the victim's anus. Defense counsel conceded at oral argument that he did not know whether samples from the victim's anus existed and, having failed to even brief the issue, has not given this Court reason to believe this evidence exists. Moreover, because all existing biological samples relevant to the case are in the possession of the trial court (having been admitted into evidence), appellant ought to be able to provide record references to show that the evidence exists, if in fact it does.

With regard to the fingernail clippings and the rape kit, appellant has failed to show a reasonable probability that exculpatory results would prove his innocence. Zavala did not admit her involvement or implicate appellant until the day after the child died. Even more time—possibly eighteen hours or more [19]—elapsed between the time of the child's death and the time a rape kit was obtained from Zavala and appellant's fingernails were clipped. While the presence of the child's DNA under appellant's fingernails could indicate guilt, the absence of such DNA would not indicate innocence. Moreover, at best, a

negative result from the rape kit could have a bearing on whether appellant and Zavala had sexual intercourse, but it would not indicate innocence of the capital murder of the child.[20]

Even if one concluded that negative test results supplied a very weak exculpatory inference, such an inference would not come close to outweighing appellant's confession. Not only did appellant admit to sexually assaulting and murdering the child, but his sexual assault admissions were also corroborated by autopsy results showing injury to the victim's anus. And although appellant claims that his confession was involuntary because it was beaten out of him, the trial court found against him on that claim at trial,[21] and he failed to raise such a claim on direct appeal or in his application for writ of habeas corpus.

Moreover, Zavala's recantation does not cast doubt on the veracity of appellant's confession. While the autopsy results are consistent with appellant's confession, they contradict Zavala's assertion in her written recantation that the child was not sexually assaulted. Also, having been convicted of capital murder with regard to this crime

---

*arguendo* that appellant has raised a fact issue with regard to the existence of anal samples in the rape kit.

**19.** In a published opinion in Zavala's case, the Court of Appeals recited that, while Zavala was questioned by police on the day the victim disappeared, she did not admit her involvement or implicate appellant until the next day, after the child's body had been found. It was only then that she claimed to be a victim of appellant. *See Zavala v. State,* 956 S.W.2d at 724–725.

**20.** The absence of appellant's DNA from any anal samples (if they existed) would also be unhelpful in establishing appellant's innocence, as the incriminating evidence could have been washed away during the time the child's body was in water. Moreover, the absence of appellant's DNA would not indi-

cate innocence because it could simply mean none was deposited. In oral argument, defense counsel suggested that the absence of appellant's DNA and the presence of *Zavala's* DNA in anal samples would be exculpatory. Presumably, this suggestion is based upon the assumption that, if the water did not wash away Zavala's DNA, then it should not have washed away appellant's DNA either. Aside from the fact that such an assumption is not necessarily correct, the presence of Zavala's DNA in the child would contradict her written recantation, as she maintained that she did not commit a sexual assault. Moreover, DNA tying Zavala to a sexual assault of the victim would be consistent with appellant's guilt under the law of parties, and the jury was instructed on the law of parties at his trial.

**21.** *Rivera,* slip op. at 4.

and given a life sentence, she had nothing to lose by claiming sole responsibility for the murder. Further, her recantation purports to exculpate her of the sexual assault, which in turn might exculpate her of capital murder. The trial court disbelieved Zavala's statement and had good reason for doing so. Finally, Zavala admitted in her written recantation that she had previously given eight different stories about the incident to the police.[22]

Appellant has failed to show by a preponderance of the evidence a reasonable probability that exculpatory DNA tests would change the outcome of his trial, much less prove his innocence. Consequently, he is not entitled to a DNA test under Chapter 64.

The trial court's order is affirmed.

HERVEY, J., filed a concurring opinion in which PRICE, JOHNSON, and KEASLER, JJ., joined.

HERVEY, J., filed a concurring opinion in which PRICE, JOHNSON and KEASLER, JJ., joined.

I do not read Chapter 64 as prohibiting a convicting court from exercising its discretion to conduct an evidentiary hearing with live witnesses for the purpose of resolving issues under Article 64.03, Texas Code Of Criminal Procedure. With these comments, I join the Court's opinion.

---

22.    *See also Zavala,* 956 S.W.2d at 721–722.