IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,575






PATRICK BERNARD SMITH, Appellant



v.



THE STATE OF TEXAS






ON APPELLANT'S DIRECT APPEAL ON DENIAL OF MOTION FOR FORENSIC
DNA TESTING FROM THE 209TH JUDICIAL DISTRICT COURT OF HARRIS
COUNTY, TEXAS





 Keasler, J., delivered the opinion of the Court.


O P I N I O N 



 Patrick Bernard Smith was convicted of the capital murder of James Larue Daniel by
stabbing him with a knife in the course of robbing him. We must decide whether the trial court
erred in denying Smith's motion for forensic DNA testing. We conclude that it did not.





Factual History

 On the morning of December 26, 1997, health care workers of an assisted-living
apartment complex discovered James Larue Daniel stabbed to death in his bed. One of the
healthcare workers noticed that the stereo and television had been stolen. 

 The police collected the following evidence from the crime scene: a board used as a
shelf in Daniel's entertainment center, which was found on the floor of Daniel's apartment with
a footprint; a blood sample; two bloody towels; cigarette butts; a vial of Daniel's blood; a pair
of black shoes; a telephone receiver; and a surge protector. Examination of the back of
Daniel's entertainment center, the power strip, and the telephone receiver all revealed Smith's
fingerprints. Police also recovered a knife identified as Daniel's buried in the dirt near the
crime scene. Smith alleges that the Houston Police Department processed but never
performed DNA tests on the blood from the knife. The State introduced the knife as the
murder weapon at trial. The knife was checked out of the Houston Police Department's
Property Room for trial but never returned.

 At trial, two witnesses, Adam White and Douglas Hordge, testified that Smith told each
of them that he had killed Daniel because Daniel knew his name and where he stayed. White
testified that he and another person, Grover, met Smith at Daniel's apartment complex. Smith
gave Grover a television and went into Daniel's apartment. White followed Smith into Daniel's
apartment and found him holding a bloody knife. Hordge also testified that Smith told him that
he buried the knife at the corner of the apartment complex by the fence. Hordge discovered
a knife there and later went to the police to report finding the knife.

Procedural History

 A jury convicted Smith of capital murder on October 22, 1999, and the court imposed
a life sentence. On February 25, 2002, Smith filed a pro se motion to request DNA testing. 
The court appointed counsel for Smith, and his counsel prepared a motion for forensic DNA
testing. The State filed its motion requesting the court to deny Smith's request. The court
denied testing.

 Smith then filed a timely notice of appeal pro se which the trial court erroneously sent
to the Fourteenth Court of Appeals. The Fourteenth Court of Appeals dismissed Smith's appeal
for lack of jurisdiction, holding that in a capital murder case, jurisdiction of an appeal from the
denial of a motion for forensic DNA testing is proper in the Court of Criminal Appeals. (1) The
appeal was then correctly filed in this Court. In his appeal, Smith argues that the trial court
erred in denying his motion for forensic DNA testing of the knife.

Analysis


 A court may order forensic DNA testing if it finds three things: (1) that the evidence
"still exists and is in a condition making DNA possible;" (2) (2) that the evidence "has been
subjected to a chain of custody sufficient to establish that it has not been substituted, tampered
with, replaced, or altered in any material respect;" (3) and (3) that "identity was or is an issue in
the case." (4) However, the convicted person bears the burden of establishing, by a preponderance
of the evidence, that "a reasonable probability exists that the person would not have been
prosecuted or convicted if exculpatory results had been obtained through DNA testing." (5) This
means that the convicted person must show a reasonable probability exists that exculpatory test
results would prove his innocence. (6) 

 We defer to the "trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other
application-of-law-to-fact issues." (7) Smith challenges the trial court's findings that he failed
to meet the requirements of the statute under Article 64.03(a)(1) and Article 64.03(a)(2). (8) 
Since we find that Smith fails to show a reasonable probability that he would not have been
prosecuted or convicted if an exculpatory test result had been obtained by testing the knife
under Article 64.03(a)(2), we need not address the other requirements of the statute. Smith argues that the trial court erred in finding that based on the lack of the evidence,
he failed to show by a preponderance of the evidence that a reasonable probability existed that
he would not have been prosecuted or convicted if an exculpatory test result had been obtained. 
He maintains that the true perpetrators of the crime painted the knife with someone else's
blood and planted the knife in an effort to frame him for the crime. He contends that if
forensic DNA testing shows the blood on the knife is not Daniel's, then the scheme will be
revealed and establish his innocence. 

 If performing DNA tests on blood from the knife would reveal that the blood is not
Daniel's, it might be exculpatory, but it would fail to prove his innocence. The evidence
presented at trial shows that Smith admitted to Adam White and Douglas Hordge that he killed
Daniel; police found Smith's fingerprints on a surge protector, the entertainment center, a
telephone and glasses in Daniel's apartment; and Smith told Hordge where he buried the knife
used to kill Daniel which police recovered at that location. All of this evidence constituted
sufficient evidence for the trial court to convict Smith. Testing the knife would only serve to
"muddy the waters" rather than prove his innocence. (9) We find that the trial court properly
concluded that Smith failed to meet his burden under Article 64.03(a)(2)(A). (10)Conclusion

 We find that the trial court did not err in finding denying Smith's motion for forensic
DNA testing. The trial court's judgment is affirmed.


DATE DELIVERED: October 8, 2003


DO NOT PUBLISH




1. Smith v. State, 92 S.W.3d 846, 847 (Tex. App.--Houston [14th Dist.] 2002, no
pet.)
2. Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i) (Vernon 2003).
3. Id. at art. 64.03(a)(1)(A)(ii).
4. Id. at art. 64.03(a)(1)(B).
5. Id. at art. 64.03(a)(2)(A).
6. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).
7. Id.
8. Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon 2003).
9. Rivera, 89 S.W.3d at 59; Kutzner v. State, 75 S.W.3d 427, 439 (Tex. Crim. App.
2002). 
10. Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (Vernon 2003).