In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00153-CR
______________________________


THOMAS H. BARANOWSKI, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 014310-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Thomas H. Baranowski pled guilty in 1984 to allegations of sexual assault. In
August 2003, he filed his motion for DNA testing pro se. See Tex. Code Crim. Proc. Ann.
art. 64.01 (Vernon Supp. 2005). He now appeals the trial court's order denying his motion. 
He raises three points of error, challenging the trial court's findings. We affirm.

I.        Factual and Procedural History
          Baranowski pled guilty in May 1984 to sexual assault.


 A Gregg County jury
assessed an enhanced punishment of life in prison and a $10,000.00 fine. Nearly twenty
years later, on August 6, 2003, Baranowski filed his motion for forensic DNA testing pro se,
stating "that proper testing of DNA evidence in possession of the [S]tate during the
prosecution of this case will establish the true identity of the person committing the offense
. . . ." He also stated that "[n]ew DNA evidence has been discovered in a lab" and that he
"believes that the materiality of this evidence is such as would probably bring about a
different result on rehearing." Baranowski sought, but was initially refused, appointed
counsel. The State responded that Baranowski had failed to sufficiently plead the
requirements of Article 64.01. Specifically, the State argued Baranowski had failed to
plead that there was evidence secured at the time of trial that could be tested and that the
"new" evidence was not covered by the statute. 
          The trial court did later appoint counsel to represent Baranowski during this
proceeding. In counsel's search for the biological evidence taken at the time of trial, he
discovered from the court's file that the Tyler Crime Laboratory received several items of
clothing and linens, along with the victim's sexual evidence kit. The laboratory reported
that no sperm sample was detected on the vaginal swab included in the sexual evidence
kit or on any of the cloth items. Type O blood, consistent with the victim's blood, was found
on a gown and a blanket. Blood was also found on a watch and under the fingernail
clipping taken from the victim. However, the laboratory reported, the sample on the watch
did not respond to testing for blood type, and the sample under the victim's fingernail was
not in a quantity sufficient to determine blood type. Counsel then took steps to locate the
biological samples for further, more modern testing. 
          The Tyler Crime Laboratory, by letter, explained that it did not maintain custody of
any evidence associated with this case and that the evidence was returned to the Longview
Police Department (LPD) in 1984. Good Shepherd Medical Center stated it needed
additional information about the victim in order to identify and locate any records. The LPD
informed defense counsel that the only item retained by the LPD was the necklace
belonging to the victim. The other evidence was released to the district attorney's office
June 4, 1984. 
          So, the last known location of the evidence appears to be the district attorney's
vault. Some time elapsed during which Baranowski's counsel was in contact with the
district attorney's office. Apparently not having received a satisfactory response from the
district attorney's office, Baranowski's attorney moved the trial court to compel disclosure
of the biological evidence at issue and to order the State to provide necessary identifying
information about the victim to enable Baranowski to obtain access to hospital records. 
          The trial court held a hearing February 20, 2004, on Baranowski's motion to compel
disclosure, after which it ordered the State to deliver any biological evidence in its
possession, as well as personal identification numbers of the complaining witness. On
March 1, 2004, the State filed its "Tender," documenting the State's efforts to locate any
biological evidence from this case. Ultimately, the State concluded the LPD forwarded any
evidence gathered, except for a necklace, to the district attorney's office. The State
attached an affidavit from an investigator who searched the district attorney's vault for
evidence from this case and found none. 
          The State had disclosed the victim's date of birth in its March 1 "Tender," but did not
disclose her social security number (SSN). Baranowski maintained he could not obtain
hospital records without the SSN and, so, moved the trial court to order Good Shepherd
Medical Center to send a representative to appear before the court and disclose its file on
the complaining witness. The trial court set the hearing on this motion for April 30, 2004. 
Before the hearing, the hospital delivered its file to the district attorney's office, who turned
it over to the trial court. 
          At the April 30 hearing, the trial court and the parties attempted to clarify the
development of the process up to that point. Although the hearing seemed somewhat
unnecessary at this point, the hospital's custodian of records testified that records
previously delivered by the hospital represented all the records retained in relation to this
case. The custodian of records for the LPD testified she had disclosed all the written
material available to her at the police department. Sergeant Jamie Johnson of the LPD
testified that physical evidence was kept in a separate location from the written records and
added that he understood that no physical evidence relating to the trial was located at the
LPD. 
          At the end of this confused hearing, Baranowski's counsel realized that, as
municipal judge, he had signed the search and arrest warrant in this matter back in
January 1984. He therefore moved and was granted leave to withdraw from
representation. The trial court delayed its ruling until new counsel had been appointed for
Baranowski. 
          After appointment of new counsel, the trial court held another hearing October 14,
2004, during which the State offered its second response, reiterating its efforts to locate
the physical evidence and, again, concluding that it could not do so. Baranowski's new
appointed attorney indicated she had no objection to the State's response and the
attorneys had agreed that the State would make this second "Tender." The trial court then
denied Baranowski's motion. In its order, the trial court made three findings, all of which
Baranowski challenges: 1) Baranowski failed to prove he was seeking DNA testing
evidence that was secured in relation to the offense and that was in the possession of the
State during the trial; 2) there was no evidence that any physical evidence amenable to
DNA testing exists at the present time; and 3) there was a failure of proof with respect to
Baranowski's burden to meet the requirements of Tex. Code Crim. Proc. Ann. art.
64.03(a)(2) (Vernon Supp. 2005).
II.       Applicable Law
          A.       Standard of Review
          We employ a bifurcated standard of review in this post-conviction DNA appeal. 
Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We afford almost total
deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other
application-of-law-to-fact issues. Id.; Eubanks v. State, 113 S.W.3d 562, 565 (Tex.
App.—Dallas 2003, no pet.). Therefore, the trial court's finding regarding the existence or
location of the evidence is afforded almost total deference. See Rivera, 89 S.W.3d at 59;
Bright v. State, No. 07-04-0586-CR, 2005 Tex. App. LEXIS 7157, at *2–3 (Tex.
App.—Amarillo Aug. 30, 2005, no pet. h.).
          B.       Procedure under Article 64
          Article 64.01 imposes certain pleading requirements on a defendant seeking to
compel DNA testing:
(a)A convicted person may submit to the convicting court a motion
for forensic DNA testing of evidence containing biological material. The
motion must be accompanied by an affidavit, sworn to by the convicted
person, containing statements of fact in support of the motion.
(b)The motion may request forensic DNA testing only of evidence
described by Subsection (a) that was secured in relation to the offense that
is the basis of the challenged conviction and was in the possession of the
state during the trial of the offense, but:
(1)was not previously subjected to DNA testing:
(A)because DNA testing was:
(i)not available; or
(ii)available, but not technologically capable of providing probative
results; or
(B)through no fault of the convicted person, for reasons that are
of a nature such that the interests of justice require DNA testing; or
(2)although previously subjected to DNA testing, can be subjected
to testing with newer testing techniques that provide a reasonable likelihood
of results that are more accurate and probative than the results of the
previous test. 

Tex. Code Crim. Proc. Ann. art. 64.01.

          On receipt of a post-conviction motion requesting DNA testing, the trial court must
order the state to deliver the evidence or explain in writing why it cannot do so. Tex. Code
Crim. Proc. Ann. art. 64.02(2) (Vernon Supp. 2005). The trial court may reach its decision
on whether evidence exists to be tested "based on the sufficiency of the state's written
explanation."


 Cravin, 95 S.W.3d at 509. 
          If the trial court makes certain findings, it may order DNA testing:
(a)A convicting court may order forensic DNA testing under this
chapter only if:
(1)the court finds that:
(A)the evidence:
(i)still exists and is in a condition making DNA testing possible;
and
(ii)has been subjected to a chain of custody sufficient to establish
that it has not been substituted, tampered with, replaced, or altered in any
material respect; and
(B)identity was or is an issue in the case; and
(2)the convicted person establishes by a preponderance of the
evidence that:
(A)the person would not have been convicted if exculpatory results
had been obtained through DNA testing; and
(B)the request for the proposed DNA testing is not made to
unreasonably delay the execution of sentence or administration of justice.

Tex. Code Crim. Proc. Ann. art. 64.03(a).
III.      Analysis
          A.       Did the Trial Court Err by Finding Baranowski Failed To Prove He
Sought Testing of Evidence Secured in Relation to the Offense, Which
Was in the State's Possession at the Time of Trial?

          Assuming Baranowski was successful in arguing that he did meet Article 64.01's
pleading requirements, then the appropriate remedy would be to order the State to produce
the evidence or explain, which, of course, the trial court already did. See Tex. Code Crim.
Proc. Ann. art. 64.02 (Vernon Supp. 2005). So, the issue concerning whether
Baranowski's motion properly pled the evidence at issue in accordance with Article
64.01(b) is rendered moot by the fact that the trial court did, in fact, order the State to
produce the evidence. For this reason, we overrule this first point of error as moot.



          B.       Did the Trial Court Err By Concluding There Is No Physical Evidence
Amenable to DNA Testing Currently in Existence?

                    1.       The Record Supports the Trial Court's Finding
          First, reading this point of error literally and affording nearly total deference to this
type of finding by the trial court, we conclude the trial court properly concluded that the
biological evidence available at the time of trial no longer existed.


 The State's "Tender"
supports the conclusion that the evidence ultimately ended up at the district attorney's
office. There, Investigator Mike Augustine searched the vault for any biological evidence
in connection with Baranowski's trial and found none. Beyond that, the district attorney's
office can provide no details as to whether or how the evidence was removed, destroyed,
or lost. After reviewing the evidence submitted, we find that the record supports the trial
court's determination that no evidence containing biological material capable of DNA
testing presently exists. The trial court was aware of the great deal of time that had
elapsed between Baranowski's conviction and his motion for DNA testing—nearly twenty
years. Considering this extensive lapse of time, the State's response that it simply did not
know what happened to the evidence is not surprising. Nor is the response inadequate as
it might have been had the State's response involved a more recent conviction. Deferring
to the trial court's finding, we hold that the trial court properly denied Baranowski's motion
for post-conviction DNA testing. See Lopez v. State, 114 S.W.3d 711, 717 (Tex.
App.—Corpus Christi 2003, no pet.).
                     2.       Any Complaint Concerning Adequacy of State's Search Was
Waived

          At oral argument, it became clear that Baranowski's argument also challenged the
trial court's acceptance of the results of the State's search and the adequacy of the State's
explanation why it could not deliver the evidence. That is, Baranowski argues the trial court
should have made the State look again or look more thoroughly.
          The Texas Court of Criminal Appeals makes clear that the issue of asking for more
investigation on the state's part is an issue that can be waived by a failure to request such
relief from the trial court. See Shannon, 116 S.W.3d at 54–55. Such is the very situation
we have before us. The record shows no request for a further search was made to the trial
court. In fact, Baranowski's second appointed attorney affirmatively stated she had "no
objection to the tender today" and indicated that the parties had come to some sort of
agreement as to the State's second response or "tender." Since Baranowski failed to
request from the trial court an order directing the State to do more, he has not preserved
for our review the trial court's failure to provide such relief. See Tex. R. App. P. 33.1;
Shannon, 116 S.W.3d 54–55.
          We overrule this point of error and, based on such disposition, conclude that we
need not address the remaining point of error


 and affirm the trial court's ruling.


 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 5, 2005
Date Decided:         November 2, 2005

Publish