Opinion issued July 1, 2010

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00348-CR

———————————

Chelce A. White, Appellant

V.

THE State OF
TEXAS, Appellee



 



 

On Appeal from the 149th District Court

Brazoria County, Texas



Trial Court Case No. 42,320-1

 



 

MEMORANDUM  OPINION

In 2004, a
jury convicted appellant, Chelce A. White, of the offense of murder and
assessed punishment at life imprisonment and a fine of $10,000.  This Court affirmed appellant’s conviction. See White v. State, No. 01-04-00410-CR,
2006 WL 727809 (Tex. App.—Houston
[1st Dist.] March 23, 2006, pet ref’d) (not designated for publication). In
2009, appellant filed a motion for post-conviction DNA testing of 20 items,
which his motion and appellate brief indicate were collected from the scene at
which the complainant’s body was found,[1] and a request for
appointment of counsel.  The trial court
denied both motions by an order incorporating findings of fact and conclusions
of law. 

We determine whether (1) the trial
court erred in denying appellant’s motion for DNA testing on its merits; (2)
his rights to due process and equal protection were denied because the clerk
initially forwarded the clerk’s record to the Court of Criminal Appeals and allegedly
did not send him a copy of the order denying his motion; (3) the State violated
article 64.02(a)(2) of the Texas Code of Criminal Procedure by not turning over
possession of the items to be tested to the trial court; (4) appellant was
entitled to reply to the State’s response to his motion for DNA testing before
the trial court’s ruling; and (5) the trial court erred in denying appellant’s
motion for appointment of counsel and in denying a hearing for this
determination. We affirm.

 

BACKGROUND

In February 2009, appellant filed
two pro se motions: one for DNA testing and another for the appointment of
counsel. See Tex Code Crim. Proc.
Ann. arts. 64.01, 64.03 (Vernon
2007). In pertinent part, the trial court’s order denying those motions
provided: 

[T]he Court finds that the Applicant
has made insufficient allegations 1) to establish by a preponderance of the
evidence that the defendant would not have been convicted if additional DNA
testing was conducted; 2) to establish that the identity was or is an issue in
the case; and 3) to establish that the defendant was not at fault that the DNA
testing was not done at trial. In addition, the Applicant has failed to show
that the original testing of hair found in a vacuum cleaner could be subjected
to newer testing techniques that would provide a reasonable likelihood of a
more accurate result than the DNA results submitted at trial.  The Applicant therefore is not entitled to
obtain DNA testing or retesting under Art. 64.03 of the Code of Criminal
Procedure.

 

The Court finds the
Defendant has failed to show reasonable grounds for appointment of counsel as
required under Article 64.01(c) of the Code of Criminal Procedure.  The State’s Motion to Deny DNA Testing and the
Appointment of Counsel is GRANTED.  The
Court DENIES the Defendant’s Motion for DNA testing and Request for Appointment
of Counsel.

 

(Emphasis removed.)

 

DENIAL OF POST-CONVICTION DNA TESTING

In his issue four and part of his “ground
three,” appellant contends that DNA testing of the 20 items would have proved
his innocence, that the trial court erred in finding that identity was not at
issue in the case,[2] and
that the trial court erred in finding that appellant failed to establish his
lack of fault in procuring DNA testing during the original trial.  If the trial court was correct in any of these
findings, we must affirm. See Tex. Code
Crim. Proc. Ann. art.
64.03(a)(1)–(2) (providing that cited requirements are conjunctive, not
disjunctive).

A.
     Standard of Review

We review a convicting court’s
denial of post-conviction DNA testing under a bifurcated standard of review. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim.
App. 2002). “Reviewing courts defer to a trial judge’s findings of fact when they
are supported by the record.” Esparza v. State,
282 S.W.3d 913, 921 (Tex. Crim. App. 2009). “They also defer to a trial judge’s
application of law to fact questions when those questions turn on credibility
and demeanor.” Id. “Finally, pure
legal issues are given a de novo review by appellate courts.” Id.

B.
     Discussion

          Texas
Code of Criminal Procedure article 64.03(a)(2)(A) requires a person requesting
DNA testing to show that he or she “would not have been convicted if
exculpatory results had been obtained through DNA testing.” Tex. Code
Crim. Proc. Ann. art.
64.03(a)(2)(A). To meet this requirement, a convicted person must show that “a
reasonable probability exists that exculpatory DNA tests would prove [his]
innocence.” Rivera, 89 S.W.3d at 59.

          In
issue four and part of ground three, appellant contends that the trial court
erred in implicitly concluding that no reasonable probability existed that
exculpatory DNA tests would prove his innocence.[3]  He urges that “[t]he court’s denial of post
conviction DNA testing is to deny an innocent man his only avenue left to him,
to prove his innocence, for without any of his DNA showing on the items from
the scene in which the body of Sonya White was found, the State has not one
iota, scintilla of evidence to connect [him] with the murder of Sonya White.”  

Although the trial court did not
hold an evidentiary hearing, our 2006 opinion sets out the material facts: 

On February 25, 2005, . . . Sonya
[White, the complainant,] never returned for her afternoon [job]. 

 

 . . . 

 

[Sonya’s mother and friend]
drove by the house/office owned by appellant’s boss, Leslie Wacasey, at around
7:30 p.m., but appellant’s truck was not there. 

 

.
. .

 

[A]ppellant had left a
message for Sonya at 10:40 a.m. on February 25 asking her to have lunch with
him.

 

.
. .

 

Appellant gave [the police]
his address as 2112 Smith Lane, which was actually the home/office of his
employer, Wacasey. He stated that he was going to meet Sonya for lunch on
February 25. He flagged Sonya down in a Kroger parking lot and told her that he
was not going to be able to make it to lunch because he was sick. . . . then
Sonya left. Appellant claimed that he did not return to work[.]

 

.
. .

 

On Saturday after Sonya
disappeared, her mother and aunt again confronted appellant. . . . He replied,
“I wish I could bring her back.”

 

. . .

 

Appellant told Miller [who
was a volunteer involved in the search] that he met Sonya in a parking lot on
February 25. Later, he told Miller, “If anybody knew her double lifestyle,
nobody would be searching for her.”  . .
. Appellant told Miller that he saw Sonya drive west on Nasa Road One toward
Highway 45. . . . When Miller told him that Sonya would probably show up on the
surveillance cameras anyway, appellant became concerned and acted nervous. 

 

.
. .

 

Appellant never mentioned
that he had been renting an apartment at the Extended Stay America Hotel on
Nasa Road One.

 

.
. .

 

On March 6, Greg Guthrie
testified that he found a body just off County Road 210 in Brazoria County and
called the police. . . . The officers had to walk through knee deep water to
get to the body. Parmiter fingerprinted the body, later identified as that of
Sonya White, and collected evidence from the scene. Among the items recovered
from the scene was a receipt from a Kentucky Fried Chicken restaurant on Nasa
Road One, near the Extended Stay America Hotel.

.
. .

 

[On] March 6, Lieutenant S.
Ricks of the Brazoria County Sheriff’s Office conducted a third videotaped
interview of appellant. . . . [On] February 26, appellant moved his stuff from
Extended Stay America Hotel to Wacasey’s house because “he didn’t need it
anymore with Sonya being missing.”

 

.
. .

 

On March 8, the Brazoria
County Crime Scene Unit was dispatched to room 333 of the Extended Stay Hotel
on Nasa Road One. Appellant had checked . . . out on February 27, 2002, two
days after Sonya disappeared. He was not scheduled to check out. . . . He left
many personal items in his room, including jeans, boots, wine glasses, a
nightgown, and a box of chocolates. The jeans were dirty and brownish red from
the knee down and the boots were muddy.  . . . [A] general manager for Extended Stay
America Hotels, testified that appellant seemed nervous when he checked out. He
was pale, in a hurry, and told her that he had to take care of some business.

 

.
. .

 

When Lieutenant Parmiter
searched room 333 . . . [s]amples taken from these locations were collected and
sent to the University of North Texas DNA Laboratory for testing. Parmiter
testified that the stain on the carpet indicated the loss of a large amount of
blood.  Someone had attempted to clean
the spot on the carpet.

 

.
. .

 

Appellant told Wacasey that,
if anyone asked, tell them that appellant had been staying at his house “for a
while.” When appellant left, he told Wacasey that he did not know if he was
coming back . . . . Wacasey testified that appellant’s clothes were kept in the
same closet as Wacasey’s vacuum cleaner. Wacasey testified that he had not used
his vacuum cleaner in the six to eight months that he had lived in the house.
When crime scene investigator Murphy examined the vacuum cleaner, she found
long blonde hairs in it. These hairs were recovered and submitted to the
University of North Texas DNA Laboratory for testing.

 

.
. . 

 

Christina Capt, a forensic
DNA analyst, testified that she extracted a significant amount of DNA from the
stained carpet, the carpet pad, the sheet rock, and the concrete recovered from
room 333. All of these items, upon which nuclear DNA testing was conducted,
matched the DNA profile of Sonya White.

 

.
. .

 

[Forensic DNA analyst] Amy
Smutz compared the mitochondrial DNA from the hair samples to the hair of Sonya
White. The DNA matched.

 

.
. .

 

Appellant testified on his
own behalf at trial. . . . He did not see any blood on the carpet, but stated
that Sonya had cut her thumb.

 

.
. .

 

On cross-examination,
appellant admitted that the Kentucky Fried Chicken receipt, which was found
near Sonya’s body, came from the restaurant near his hotel. 

 

White, 2006 WL
727809, at *1–*4. 

Because White’s body was found lying
in the open beside a public road, even if these 20 items contained DNA evidence
from people other than appellant, that fact would not necessarily prove that
appellant was not at the site or exonerate him. See Thompson v. State, 95 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2002, pet ref’d) (holding
that additional DNA testing would “merely muddy the waters” because it would
not prove appellant’s innocence against the other evidence, even if the results
would supply an exculpatory inference).  Accordingly,
we hold that the trial court did not err in finding that no reasonable
probability existed that exculpatory DNA tests would prove appellant’s
innocence. See Rivera, 89 S.W.3d at
59 (interpreting article 64.03(a)(2)(A)). 

We overrule issue four and the
related portion of ground three.[4] Given our disposition, we need not reach the portions of ground
three challenging the findings that identity was not at issue in the case and
that appellant failed to establish his lack of fault in procuring DNA testing
during the original trial. See Tex. Code
Crim. Proc. Ann. art.
64.03(a)(1)–(2) (providing that cited requirements are conjunctive, not
disjunctive).

CLERK’S ACTIONS

In his issues one and three,
appellant contends that his right to due process, his right to equal protection,
and unspecified rights under the Sixth Amendment were denied because the trial-court
clerk (1) initially forwarded the clerk’s record to the Court of Criminal
Appeals, which allegedly violated chapter 64’s procedures by improperly
treating the ruling as one “under [Texas Code of Criminal Procedure] Art.
11.07, Sec. 3(d),” and (2) did not send him a copy of the order denying his
motion.  

The record does not show that
appellant was not sent a copy of the court’s order, but in any event, appellant
does not explain how he was harmed.  Indeed,
appellant timely appealed, this Court mailed the clerk’s record to him before
his brief was due, a “green card” acknowledging receipt of the record was
signed and returned, and he quotes and analyzes in his brief the very order that
he claims not to have received. 
Likewise, although the record shows that the clerk mistakenly forwarded the
clerk’s record to the Court of Criminal Appeals at first, that same record was later
filed in this Court, and it was sent to appellant before he filed his brief.  

We overrule issues one and three. 

STATE’S DUTY TO DELIVER EVIDENCE

In his issue two, appellant
contends that the State violated its duty under Texas Code of Criminal
Procedure article 64.02(a)(2) to turn over possession of the items to be tested
to the trial court.  See Tex. Code Crim.
Proc. Ann art. 64.02(a)(2) (Vernon 2007).  Relatedly, under the remainder of his “ground
three,” appellant contends that the State’s failure to turn over this evidence
leads to a presumption like that arising in civil cases for spoliation of
evidence and that the court’s not requiring the State to turn over the evidence
was a violation of due process and equal protection.

Article 64.02(a)(2) requires the
State to “(A) deliver the evidence to the court, along with a description of
the condition of the evidence; or (B) explain in writing to the court why the
State cannot deliver the evidence to the court” within a 60-day period from
receiving the defendant’s motion for post-conviction DNA testing. Id. The trial court signed its orders
denying both motions while still within the State’s 60-day timeline. The
State’s duty was extinguished as soon as the court ruled to deny both motions.
Moreover, there is no harm to appellant in any event because the trial court
did not deny the motion on the basis of the evidence’s condition, its ability
to be tested, or its non-delivery.

We overrule issue two and the corresponding portion
of ground three. 

RIGHT TO REPLY TO STATE’S RESPONSE

In his issue five, appellant
contends that he was entitled to reply to the State’s response to his motion
for DNA testing before the trial court’s ruling. Chapter 64 speaks only of a
motion and a response, and appellant cites no authority that requires a trial
court to wait for a movant’s reply to be filed before it may rule on a motion
under chapter 64. See Tex Code
Crim. Proc. Ann. arts.
64.01–64.05 (Vernon 2007).

We overrule issue five.

RIGHT TO APPOINTED COUNSEL AND A HEARING

In his “ground four,” appellant
argues that the trial court erred in denying his motion for appointment of
counsel. Appellant further argues that he was entitled to a hearing for this
determination. 

A.
     Right to Appointed Counsel

In a post-conviction DNA
proceeding, “the entitlement to counsel is not absolute; it is conditioned on
three criteria.” Gutierrez v. State,
307 S.W.3d 318, 321 (Tex. Crim. App. 2010). First, a defendant must inform the
trial court that he or she wishes to submit a motion. Id. Second, the trial court must find that “reasonable grounds”
exist for the filing of a motion. Id.
Third, the trial court must find that the convicted person is indigent. Id.

The second criterion is relevant in
this appeal. The statute does not define “reasonable grounds.” However, this
Court has looked to the requirements of article 64.03 of the Texas Code of
Criminal Procedure to determine whether reasonable grounds for the filing of a
motion have been asserted. In Bates v.
State, 177 S.W.3d 451, 454 (Tex. App. —Houston [1st Dist.] 2005, pet. ref’d), this Court held that no reasonable
grounds existed for filing a motion because the trial court could have
reasonably concluded that Bates would have been convicted even if exculpatory
results have been obtained through DNA testing. Id. We have already upheld that the trial court’s finding that no reasonable
probability exists that exculpatory DNA tests would prove appellant’s innocence.
Therefore, we hold that the trial court did not err in finding that appellant
failed to show reasonable grounds for the appointment of counsel.

We overrule this portion of ground
four.

B.      Right to a Hearing

Appellant also contends that the
trial court erred by not holding a hearing on his motion for appointment of
counsel and motion for DNA testing.  The
Court of Criminal Appeals has held that article 64.03 does not require a
hearing before the trial court determines whether a defendant is entitled to
DNA testing. Rivera, 89 S.W.3d at 58–59.
The court noted that if the Legislature had intended for a hearing to be
mandatory, it could have so specified in the statute, but did not. Id. at 59. Similarly, we note that
nothing in article 64.01(c) requires a hearing before the trial court
determines whether a defendant has met the requirements for the appointment of
counsel.  See Tex. Code Crim. Proc.
Ann. art. 64.01(c).

We overrule the remainder of ground
four.

 

 

CONCLUSION

We affirm the order of the trial
court.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]
          The items were a straw, two
pieces of plastic cups, a cigarette, a cigarette butt, five beer cans, two
cups, a receipt, a copy of a receipt, a candy wrapper, some blue plastic, and
four shell casings.





[2]
          Appellant does not expressly
name this finding in his challenges, but a liberal reading of his brief
indicates that he does challenge it.





[3]
          As does appellant, we equate the trial court’s finding that appellant “has made insufficient allegations to
establish by a preponderance of the evidence that the defendant would not have
been convicted if additional DNA testing was conducted” with a finding
under article 64.03(a)(2)(A) that no
reasonable probability existed that exculpatory DNA tests would prove his
innocence.

 





[4]
          Also under issue four, appellant
notes that “[a]t no time, nor in any
fashion, has this appellant requested the testing of the ‘hair from the
shop-[vacuum].”  He then complains that
the trial court’s finding concerning the hair’s testing showed that the court
“failed to read, or investigate the issues of this applicant’s claim on their
own, or apparently ‘check’ the accuracy of the order the state included with
[its] response.”  He equates the
inclusion of this finding, and the State’s briefing on the issue below, with
the offense of tampering with a governmental record, which he requests “be
applied in the instant case . . . .” 
Whatever this challenge is, it has no application to the review of an
order denying post-conviction DNA testing, and we overrule it.