

| EDUARDO SANCHEZ, | § | No. 08-20-00179-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (970D11378) |
| | § | |

## O P I N I O N

Appellant, Eduardo Sanchez, appeals the denial of his motion for DNA testing. TEX.CODE CRIM.PROC.ANN. art. 64.01. Appellant asserts the trial court erred on three grounds. First, the trial court erred when it did not address Appellant's motion to appoint a DNA expert; second, when it found there was no reasonable likelihood the Puma shoes contained biological material; and third, that Appellant did not establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. TEX.CODE CRIM.PROC.ANN. art. 64.03. We affirm.

## BACKGROUND

### Factual Background

On the night of October 20, 1997, Appellant, the victim, Osvaldo Vargas Jr., and another individual, Raul (a.k.a. Rudy) attended a party in Horizon City, Texas. At approximately 10:30 p.m., Appellant and Raul left with Vargas to go buy more beer. On the way to the store, Appellant

asked Vargas "[d]o you want to kill me?" Vargas said "[y]eah" and punched the back of Appellant's head. In response, Raul punched Vargas, and Appellant shot Vargas using a sawn off .22-caliber rifle. Appellant shot Vargas two more times while Raul continued to punch and kick him. After shooting Vargas, Appellant left the rifle and returned to the party with Raul. A witness testified Appellant's pants, shirt, and black Puma shoes were covered in blood. Appellant and Raul changed their clothes at the party and left with their blood-stained clothing in a plastic bag. Appellant and Raul returned to hide Vargas' body and destroy their blood-stained clothing where they found Vargas still alive. Raul began to punch and kick Vargas and placed the plastic bag over his head to suffocate him. Afterwards, Appellant and Raul returned to the party.

### The Investigation & Evidence

Detectives from the El Paso County Sheriff's Office and the Horizon City Police Department began an investigation after receiving reports of gun shots in the area and a missing person's report from Vargas' family. Law enforcement discovered Vargas' body in a desert area alongside a road. After searching the area and other locations, two .22-caliber projectiles, a live .22-caliber round, a .22-caliber casing, a sawed-off stock from a rifle, several pairs of jeans, several shirts, a pair of overalls, five pairs of shoes, a San Francisco Forty-Niners poncho, and a Dallas Cowboys jacket were found. Law enforcement noticed several sets of shoe prints surrounding the crime scene and took casts of the prints.

A witness testified they had seen Appellant with a sawn off .22-caliber rifle previously. The same witness confirmed the gun found at the scene was the one seen in Appellant's possession. Another witness testified Appellant was wearing a San Francisco Forty-Niners poncho like the one found at the site. The Texas Department of Public Safety performed DNA testing on three sticks, an ignition switch, a rifle buttstock, several pairs of jeans, several shirts, a pair of overalls, five

pairs of shoes, a Dallas Cowboys jacket, and the San Francisco Forty-Niners poncho. The testing revealed DNA consistent with Vargas' DQ Alpha subtype on a pair of Nike shoes, a pair of jeans, the Cowboys jacket, and the San Francisco Forty-Niners poncho. Approximately 5.4 percent of Hispanics have this specific DQ Alpha subtype. Autopsy revealed Vargas was ultimately killed by blood loss from a bullet wound perforating his left common carotid artery and jugular vein.

Based on information acquired from the crime scene and witness testimony, law enforcement searched Appellant's home. The search yielded a pair of black Puma shoes. The sole pattern on these shoes matched the casts of shoe prints taken from the crime scene. The shoes appeared to contain blood stains, but tests did not indicate the presence of blood. Appellant fled to Mexico after learning he was being sought by law enforcement. Approximately one month later, Appellant surrendered himself at the US-Mexico border.

While in custody, Appellant made a signed written statement regarding the events of the murder. Appellant stated on the night of October 20, 1997, he attended a party at a friend's house with Raul, and Vargas. Appellant described the clothes he wore that night and the sawed off .22-caliber rifle concealed in the waistband of his pants. He explained how as he, Vargas, and Raul walked to go get beer they got into an altercation, and admitted he shot Vargas. According to Appellant, he and Raul returned to the party to change clothes and then returned to the scene to destroy their blood-stained clothing. At which point they noticed Vargas was still alive and placed a plastic bag over his head to suffocate him. Finally, Appellant stated he got scared when he learned law enforcement was looking for him and fled to Mexico.

### Procedural Background

Appellant was indicted of murder of Osvaldo Vargas, Jr. TEX.PENAL CODE ANN. § 19.02(A)(1). Following a trial, the jury returned a guilty verdict, and the trial court sentenced

Appellant to 50 years' imprisonment. On January 28, 2020, Appellant filed a motion for DNA testing under Chapter 64 of the Code of Criminal Procedure seeking to have the black Puma shoes found at his residence tested. On June 18, 2020, Appellant requested the trial court appoint a DNA expert to re-test the purported biological evidence. No order was entered either denying or granting the motion for appointment of a DNA expert. The trial court denied Appellant's motion stating Appellant failed to demonstrate entitlement to DNA testing under Chapter 64. Specifically, the trial court found, Appellant failed to demonstrate the Puma shoes had a reasonable likelihood of containing biological material, and that he would not have been convicted if exculpatory results had been obtained through DNA testing of the Puma shoes. TEX.CODE CRIM.PROC.ANN. art. 64.03. Appellant subsequently filed a petition for writ of mandamus in this Court, alleging the trial court had failed to appoint counsel to represent him in his motion for DNA testing. This Court denied Appellant's petition in *In re Sanchez*, No. 08-20-00126-CR, 2020 WL 5015446 (Tex.App.—El Paso Aug. 25, 2020, orig. proceeding)(mem. op., not designated for publication). This appeal followed.

## DISCUSSION

### *Issues*

Appellant alleges the trial court erred: (1) when it denied his motion for a DNA expert; (2) when it found there was no reasonable likelihood the Puma shoes contained biological material; and (3) Appellant did not establish by a preponderance of the evidence he would not have been convicted if exculpatory results had been obtained through DNA testing.

### *Applicable Law & Standard of Review*

Chapter 64 allows a convicted person to submit a motion to the convicting court for forensic DNA testing of evidence that has a reasonable likelihood of containing biological

4

material. TEX.CODE CRIM.PROC.ANN. art. 64.01. The burden is on the convicted person to prove the evidence has a reasonable likelihood of containing biological material. *State v. Swearingen*, 424 S.W.3d 32, 37 (Tex.Crim.App. 2014). However, Article 64.01 does not entitle the convicted person to any preliminary testing that would merely be a predicate to a subsequent DNA test, this includes initial testing to determine if evidence contains testable biological material. *Routier v. State*, 273 S.W.3d 241, 250 (Tex.Crim.App. 2008)(Chapter 64 does not allow for non-DNA testing as a predicate for post-conviction DNA testing). In addition to demonstrating the evidence has a reasonable likelihood of containing biological material, the convicting court may only grant an order for forensic testing if: (1) the evidence still exists and is in a condition making DNA testing possible; (2) the evidence has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect; (3) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; (4) identity was or is an issue in the case; and (5) the convicted person must be able to establish by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing and the request for DNA testing is not made to unreasonably delay the execution of sentence or administration of justice. TEX.CODE CRIM.PROC.ANN. art. 64.03.

When reviewing a trial court's ruling on a Chapter 64 motion for post-conviction DNA testing, this Court will afford the trial court almost total deference in determination of historical facts and in the application of law to those facts when they turn on witness credibility and demeanor. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App. 2002). All other applications of law to fact questions are reviewed *de novo*. *Id.*

5

**Preponderance of Evidence Appellant Would Have Been Acquitted if Exculpatory Results Had Been Obtained Through DNA Testing**

We address Appellant's third issue first because it is dispositive of Appellant's arguments. If the trial court's decision is upheld, then Appellant's remaining issues become moot. TEX.R.APP.P. 47.1. If the evidence from Appellant's motion for DNA testing is insufficient to create a 51 percent likelihood Appellant would not have been convicted, then there is no need to address whether Appellant satisfied the other requirements for DNA testing under Article 64.03 or whether he was entitled to appointment of a DNA expert.

Appellant argues the court erred when it found he failed to establish by a preponderance of the evidence he would not have been convicted if exculpatory results had been obtained by DNA testing of the Puma shoes. Appellant asserts DNA testing would show Vargas' DNA was not present on the Puma shoes and this information would be sufficient to create a 51 percent likelihood that Appellant would not have been convicted.

### *Analysis*

For an appellant to be entitled to post-conviction DNA testing under Chapter 64, he must demonstrate by a preponderance of the evidence he would not have been convicted if exculpatory results had been obtained through DNA testing. TEX.CODE CRIM.PROC.ANN. art. 64.03(a)(2)(A). The exculpatory results must be weighed against the other evidence brought against Appellant to determine if there is a 51 percent likelihood Appellant would not have been convicted. *Holberg v. State*, 425 S.W.3d 282, 286-87 (Tex.Crim.App. 2014). Appellant argues the State relied heavily upon the evidence of blood on Appellant's clothing and Puma shoes during the trial. He asserts DNA testing would show the Puma shoes were not covered in blood and any biological material present did not contain Vargas' DNA. Appellant argues those results would have been sufficient

6

to weaken the State's assertions at trial, such the jury could have reasonably declined to convict Appellant.

However, even if DNA testing conclusively proved the lack of Vargas' DNA on the Puma shoes, there is significant physical evidence connecting Appellant to the murder. Appellant's other clothing tested positive for the presence of DNA consistent with Vargas' DNA. DNA testing performed by the Texas Department of Public Safety on several pieces of clothing recovered at the scene, including the San Francisco Forty-Niners poncho a witness identified Appellant wore the night of the murder. Testing showed the San Francisco Forty-Niners poncho, and a pair of jeans contained DNA consistent with Vargas' DQ Alpha subtype. Additionally, casts of several sets of shoe prints taken at the scene of the crime matched the Puma shoes found at Appellant's home. This physical evidence connecting Appellant to the murder would cut against the absence of Vargas DNA on the Puma shoes.

Further, the State's arguments at trial were not merely reliant upon the blood found on Appellant's clothing or other physical evidence. Appellant made a detailed signed written statement that corroborated the physical evidence and witness testimony. Appellant's own statement admitting to the shooting of Vargas is strong, compelling evidence coupled with the physical evidence and witness testimony that corroborated it.

In his statement, Appellant explained how he attended a party with Vargas and Raul and then they left together to buy beer. A witness also testified Appellant was seen with Vargas during the party, and they later left together shortly before Vargas' time of death. Appellant wrote in his statement he was wearing a Forty-Niners poncho. A witness testified he saw Appellant wearing a Forty-Niners poncho at the party. A similar poncho was also recovered from the scene and tested positive for DNA consistent with Vargas' DQ Alpha subtype.

7

Appellant also stated he was carrying a sawn off .22-caliber rifle in his waistband when he was at the party. The witness testified he had seen Appellant carrying a .22-caliber sawn off rifle at the party. Appellant admitted he shot Vargas several times while Raul punched and kicked him. Appellant stated after he shot Vargas, he dropped the rifle before leaving the area. The same witness later identified the discarded rifle found at the scene of the crime as the same one carried by Appellant earlier that evening. Appellant stated when he returned to the party, his clothes were covered in blood. Those same witnesses testified Appellant returned to the party without Vargas and visibly covered in blood. The witness was familiar with both Appellant and Vargas, so it is extremely unlikely Appellant or Vargas were misidentified.

As such even *if* Appellant's motion for a DNA expert had been granted, *if* the Puma shoes did contain biological material, and *if* testing revealed the absence of Vargas' DNA, the testing evidence would be insufficient to show a 51 percent likelihood Appellant would not have been convicted. The cumulative amount of evidence incriminating Appellant is substantial and a jury could reasonably have found Appellant committed the murder of Osvaldo Vargas, Jr. regardless of the presence or absence of DNA on the Puma shoes. Accordingly, Appellant has failed to satisfy his burden under Article 64.03 and is not entitled to post-conviction DNA testing.

## CONCLUSION

Appellant failed to show that any exculpatory results obtained from DNA testing would be sufficient to satisfy Article 64.03's requirement that by a preponderance of evidence he would not have been convicted. We overrule Appellant's third issue. As a result, we need not address his first and second issue. TEX.R.APP.P. 47.1

Consequently, the trial court's decision to deny Appellant's motion for post-conviction DNA testing is affirmed.

June 16, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)