

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-208-CR

ALLEN FITZGERALD CALTON                  APPELLANT

V.

THE STATE OF TEXAS                    STATE

------------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

### MEMORANDUM OPINION[1]

------------

Appellant Allen Fitzgerald Calton appeals the trial court's denial of his motion for DNA testing. Because the trial court did not err by denying his request for DNA testing, we affirm the trial court's order.

Appellant was convicted of attempted murder. He appealed his

---

[1] *See* Tex. R. App. P. 47.4.

conviction, and this court affirmed the conviction.[2] Appellant also filed seven applications for writ of habeas corpus in the trial court, and the Texas Court of Criminal Appeals cited the final application for abuse of the writ.[3] Appellant also filed an application for writ of habeas corpus in federal court; it was denied on December 1, 2008.[4]

Subsequently, Appellant filed his motion for DNA testing. The State filed its response and proposed findings, and the trial court adopted the State's proposed findings. Appellant argues that the trial court abused its discretion by considering his tacit admission of guilt in denying his motion for DNA testing. The State argues that the trial court's consideration of the fact that Appellant has never alleged that he did not commit the offense was proper because the statute requires that Appellant prove that identity was or is at issue to be entitled to DNA testing.[5] The State also argues that Appellant's motion for

---

[2] *Calton v. State*, No. 02-04-00228-CR, 2005 WL 3082202 (Tex. App.—Fort Worth Nov. 17, 2005, pet. withdrawn) (mem. op., not designated for publication).

[3] *Ex parte Calton*, No. WR-65590-13, 2008 WL 2223894, at *1 (Tex. Crim. App. May 28, 2008, order) (not designated for publication).

[4] *Calton v. Quarterman*, No. 4: 07-CV-471-Y, 2008 WL 5083022, at *15 (N.D. Tex. December 1, 2008) (not designated for publication).

[5] *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B) (Vernon Supp. 2008).

DNA testing was properly denied because Appellant's motion failed to meet the requirement of chapter 64 in that Appellant failed to prove that identity was at issue,[6] that newer DNA testing techniques exist that would provide more accurate and probative results,[7] and that he would not have been convicted had exculpatory DNA results been obtained.[8]

In denying Appellant's request for DNA testing, the trial court adopted the State's proposed findings of fact and conclusions of law:

### FINDINGS OF FACT

1.  [Appellant] was convicted by a jury of the second degree felony offense of attempted murder on May 19, 2004.

2.  The jury found the habitual offender allegations true and assessed punishment at confinement for life in the Texas Department of Criminal Justice — Institutional Division.

3.  The jury also made an affirmative weapon finding.

4.  The Second Court of Appeals affirmed [Appellant's] conviction.

5.  The Second Court of Appeals summarized the facts of this offense as follows:

    > On the night of April 23, 2002, [Appellant] drove to Everett Angle's home to speak with him.

---

[6] *See id.*

[7] *See id.* art. 64.01(b)(2).

[8] *See id.* art. 64.03(a)(2)(A).

When [Appellant] pulled up to Angle's house, Craig Tate[,] who was working outside, went inside and told Angle that [Appellant] was outside waiting for him. Angle walked outside to [Appellant's] car and had what appeared to be a friendly discussion with [Appellant]. During their conversation, Angle looked back at Tate and asked him to put away the lawn mowers. At that time, [Appellant] got out of his car, approached Angle, and shot him in the face. When Angle fell to the ground, [Appellant] stood over him and shot him again. The second shot glanced off Angle's skull. [Appellant] fired at Angle's head a third time and then got back into his car and drove away.

Later that night, [Appellant] engaged in a lengthy high-speed chase with police officers. The chase culminated with [Appellant] driving his car into White Rock Lake. He was charged with the attempted murder of Angle. [Appellant] represented himself at trial and a jury found him guilty of attempted murder and sentenced him to life in prison.

6. [Appellant] has not requested appointment of counsel.

7. [Appellant] represented himself at trial.

8. It is reasonable to conclude that [Appellant] does not want to be appointed counsel on this motion.

9. The State confirms that evidence exists that might contain biological material.

10. This evidence includes a cutting from a front seat, a slipper, and blood samples from both [Appellant] and the [complainant].

4

11. DNA testing was done in 2002 and 2004 but produced no results due to an insufficient amount of genetic information.

12. [Appellant] presents no evidence or documentation to support his claim that Orchid Cellmark "has a more advanced testing procedure in place that will in all probability yield conclusive results with the minuscule amount of all available evidence."

13. [Appellant] has failed to prove that there exists a reasonable likelihood that Orchid Cellmark's testing techniques would produce results based on the minuscule amout of DNA that previously was insufficient.

14. [Appellant] does not allege that he did not commit the offense.

15. At trial, the defense was that [Appellant] was hypoglycemic and therefore failed to have the "requisite mental state mens rea necessary" to intentionally commit the offense.

16. [Appellant's] defense was not that he was not involved in the offense.

17. [Appellant] argued that he may have done it in "self-defense."

18. [Appellant] makes no claim in his Motion for DNA Testing, or in his attached Declaration that (1) he did not commit the offense, (2) the DNA testing would prove that he did not commit the offense, or (3) that DNA testing would prove his innocence.

19. The evidence in the State's possession includ[es] a slipper taken from the crime scene and cuttings from [Appellant's] car.

20. [Appellant] does not allege, nor does he present any evidence, that the perpetrator's DNA would have been found

on the slipper at the crime scene.

21. [Appellant] does not allege that DNA testing would produce exculpatory results.

22. [Appellant] does not allege that DNA testing would prove his innocence.

23. [Appellant] has failed to prove by a preponderance of the evidence that the lack of [his] DNA on the slipper would prove his innocence.

24. [Appellant] has failed to prove by a preponderance of the evidence the presence of someone else's DNA on the slipper would prove his innocence.

25. [Appellant] has failed to prove by a preponderance of the evidence that the lack of [his] DNA in [his] vehicle would prove his innocence.

26. [Appellant] has failed to prove by a preponderance of the evidence that . . . the presence or lack of the [complainant's] DNA in [Appellant's] car would prove his innocence.

27. [Appellant] has failed to prove by a preponderance of the evidence that the presence of someone else's DNA in [Appellant's] car[] would prove [Appellant's] innocence.

## CONCLUSIONS OF LAW

1. The Court of Criminal Appeals has held that appointment of counsel is required if requested and the court finds reasonable grounds for a motion for DNA testing to be filed and that defendant is indigent.

2. [Appellant] has not requested appointment of counsel.

3. (a) A convicting court may order forensic DNA testing under

6

this chapter only if:
(1) []the court finds that:
(A) . . .
(B) identity was or is an issue in the case.

4.    [Appellant] has failed to allege that identity is or was an issue in this case.

5.    The trial court may order DNA testing if it finds, among other things, that the convicted person establishes by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing.

6.    The defendant must show that the absence of DNA evidence would prove his innocence and not merely "muddy the waters."

7.    In order to be entitled to DNA testing, a defendant must show "there is a 51% chance that" he would not have been convicted.

8.    The slipper and clippings from the car have already been tested and there were no results due to insufficient genetic information.

9.    To be considered for DNA re-testing, a defendant must demonstrate that items previously subjected to DNA testing can now be subjected to "newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test."

10.    [Appellant] has not demonstrated that newer testing techniques would provide more accurate and probative results than the previous test.

11.    Absence of [Appellant's] DNA on the slipper would not prove [his] innocence.

7

12.	Absence of [Appellant's] DNA on the cuttings taken from his car would not prove [his] innocence.

13.	Absence of [Appellant's] DNA evidence would merely "muddy the waters."

14.	Absence of [Appellant's] DNA evidence would not prove [his] innocence.

15.	[Appellant] has failed to show that "there is a 51% chance that" he would not have been convicted.

16.	[Appellant] is unable to prove by a preponderance of the evidence that he would not have been convicted had exculpatory results been obtained through additional DNA testing.

17.	This Court **DENIES** [Appellant's] motion for DNA testing.

[Citations omitted.]

A trial court's decision to deny a motion for postconviction DNA testing is reviewed under a bifurcated standard of review.[9] We afford almost total deference to the trial court's determination of historical facts and the application of law to those fact issues that turn on credibility and demeanor.[10] We review de novo the ultimate question of whether the trial court was required to grant a motion for DNA testing under chapter 64 of the Texas Code

---

[9] *Rivera v. State,* 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

[10] *Id.*

8

of Criminal Procedure.[11]

The Texas Court of Criminal Appeals stated in *Bell v. State* that "[t]his Court's recent review of the legislative history of Chapter 64 indicates that the legislature intended to require that a convicted person demonstrate to the trial court that a reasonable probability exists that DNA tests would prove his or her innocence."[12] The court further stated that "a court must order testing only if the statutory preconditions are met."[13]

A trial court must order DNA testing if (1) the trial court finds that the evidence still exists and is in a condition to make DNA testing possible, that it has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect, and that identity was or is an issue in the case; and (2) the convicted person establishes beyond a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing and that the request for the proposed DNA testing is not made to unreasonably delay execution of sentence or administration of justice.[14]

---

[11] *See id.*

[12] 90 S.W.3d 301, 306 (Tex. Crim. App. 2002).

[13] *Id.*

[14] Tex. Code Crim. Proc. Ann. art. 64.03(a)–(c).

Here, the evidence does exist and is in a condition to make DNA testing possible. The evidence has been adequately protected. There is no showing, however, that identity was or is an issue in this case. Additionally, while testing occurred of evidence found in the front seat of Appellant's car, there is no showing that any other person committed the offense and was in the car where the material subjected to DNA testing was found. Consequently, there is also no evidence that Appellant would not have been convicted if the DNA testing had connected the DNA sample to another person. We therefore hold that Appellant has failed to sustain his burden and that the trial court was not required to order further DNA testing. We overrule Appellant's sole point and affirm the trial court's judgment.

PER CURIAM

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 9, 2009

10