02-10-561-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND DISTRICT OF
 TEXAS
 FORT WORTH
  
  NO. 02-10-00561-CR
 
 


 

 

 


 
 
 VICTOR ANSON BAYLOR
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE
 STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

          In one point, Appellant
Victor Anson Baylor appeals the denial of his motion for DNA testing,
complaining that the trial court erred by failing to order testing of a black
mask seized at the time of his arrest.  We affirm.

II.  Factual and Procedural
Background

          In 1999, a jury convicted
Baylor of aggravated assault with a deadly weapon, to-wit: a firearm, and the
trial court assessed his punishment at sixty years’ confinement.  This court affirmed
the conviction.  See Baylor v. State, No. 02-99-00347-CR (Tex. App.—Fort
Worth May 24, 2001, pet. ref’d) (not designated for publication).

          In 2007, Baylor filed a
motion to appoint counsel.  The trial court appointed counsel for him, and in
2010, Baylor filed his request for DNA testing.  The State filed a response,
advising that a black mask—also referred to as a “stocking cap”[2]—was
available for testing but arguing that DNA testing of the mask would not
exonerate Baylor and would only “muddy the waters.”  The State also filed proposed
findings of fact and conclusions of law.  The trial court denied Baylor’s
request for DNA testing after adopting the State’s proposed findings and
conclusions, some of which are set out below.  This appeal followed.

III.  DNA Testing

          To be entitled to
post-conviction DNA testing, a convicted person must meet the requirements of
articles 64.01 and 64.03 of the code of criminal procedure; failure to satisfy
any of the requirements of both articles defeats the motion.  See Tex. Code
Crim. Proc. Ann. arts. 64.01, 64.03 (West 2011); Routier v. State, 273
S.W.3d 241, 245–46 (Tex. Crim. App. 2008); Rivera v. State, 89 S.W.3d
55, 59 n.13, 61 (Tex. Crim. App. 2002); Dinkins v. State, 84 S.W.3d 639,
641–42 (Tex. Crim. App. 2002).  As pertinent here, under article 64.03, the
convicted person must show that the evidence still exists in a condition making
testing possible, that identity was or is an issue, and that a reasonable
probability exists that he would not have been convicted if exculpatory DNA
test results had been obtained.[3]
 See Tex. Code Crim. Proc. Ann. art. 64.03(a); Rivera, 89 S.W.3d at
59 n.13.  When, as here, the trial court denies a motion for post-conviction
DNA testing without a hearing, we review the ruling de novo.  Smith v. State,
165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

          In his sole point, Baylor
complains that the trial court erred by failing to order DNA testing of the
mask, arguing that “testing could go to demonstrating whether the appellant
wore this mask during the commission of the offense.”  Baylor states that a
negative answer would be exculpatory in light of the fact that the complainant
did not identify his assailant.  The State responds that the trial court
properly denied Baylor’s request for DNA testing because Baylor was unable to
show by a preponderance of the evidence that he would not have been convicted
if exculpatory results had been obtained through DNA testing of the mask.  See
Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A).

          The following findings of
fact have bearing on Baylor’s sole point:

5.  The Second Court of Appeals summarized the
applicable facts as follows:

 

          On Friday, September 7, 1996, Robert “Denver
Bob” Winrow arrived in Fort Worth for a weekend of gambling.  On Saturday,
Winrow and [Defendant] gambled together at several locations in Fort Worth,
including the Club Fernandez.  At approximately 6:00am on Sunday morning,
Winrow left the club.  As he sat in his car at a stoplight, another car pulled
up on the passenger side.  A man of [Defendant’s] size wearing a black mask and
carrying a large caliber gun got out of the car and began shooting into the
windshield of Winrow’s car.  Winrow managed to drive off, but not before a
bullet struck him in the buttocks.

 

          Travis Chris Gray, an acquaintance of
[Defendant], testified that [Defendant] had tried to recruit his help in
robbing a man from out of town whom he had been following and watching at
various gambling establishments.  Although Gray refused, [Defendant] later told
him that he attempted to rob the man after he left the club, while he was
stopped at a red light.  According to Gray, [Defendant] stated that he got out
of his car and “unloaded” his gun into the man’s vehicle until he thought the
man was dead.

 

          On October 13, 1996, [Defendant] was stopped
for a traffic violation on Interstate 35 between Austin and San Antonio.  The
police officer searched the vehicle and found a semi-automatic pistol and a
black stocking-cap in the purse of the female passenger, Linda Cooper, who
described herself as an “intimate friend” of [Defendant].  Although Cooper
initially told the police that the gun belonged to her, she later denied having
ever seen the weapon before the officer pulled it from her purse.  At trial,
Cooper testified that she did not put the gun or the stocking-cap in her purse,
and that the only person who would have had access to her purse in the car was
[Defendant].  Ballistics tests confirmed that the weapon recovered from the
purse was the one that had been used in the assault of Winrow.

 

See Baylor v. State, No. 02-99-347-CR, Slip. Op. 2–3 (Tex. App.—Fort Worth May 24, 2001,
pet. ref’d) (not designated for publication).

 

. . . .

 

7.  The stocking-cap was seized from Defendant’s
girlfriend’s purse. . . .

 

8.  Defendant’s girlfriend testified that only
Defendant could have put the stocking-cap in her purse. . . . 

 

9.  The victim and his attacker were in separate cars.
. . . 

 

10.  There is no reason the victim’s DNA would be on
the stocking-cap.

 

11.  The stocking-cap was not seized until six days
after the assault. . . .

 

12.  There is no evidence, or allegation, that the
stocking-cap was in the same condition when it was seized as it was at the time
of the assault.

 

13.  It is possible that the stocking-cap was washed
in the six days from the time of the assault until its seizure.

 

14.  The absence of Defendant’s DNA on the
stocking-cap would not prove that he did not commit the offense.

 

15.  There is no evidence, or allegation, as to how
many people handled the stocking-cap before or after its seizure.

 

16.  The presence of other persons’ DNA would not
prove that Defendant did not commit the offense.

 

17.  Defendant is unable to show, by a preponderance
of the evidence, that he would not have been convicted if exculpatory results
had been obtained through DNA testing of the stocking-cap.

 

The trial court also made the
following pertinent conclusions of law:

7.  Defendant has failed to prove, by a preponderance
of the evidence, that he would not have been convicted had exculpatory results
been obtained through DNA testing of the stocking cap.

 

. . . .

 

9.  Defendant has failed to show that “there is a 51%
chance that” he would not have been convicted had exculpatory results been
obtained through DNA testing.

 

10.  Defendant is unable to prove by a preponderance
of the evidence that he would not have been convicted had exculpatory results
been obtained through additional DNA testing.

 

          “A ‘favorable’ DNA test
result must be the sort of evidence that would affirmatively cast doubt upon
the validity of the inmate’s conviction; otherwise, DNA testing would simply
‘muddy the waters.’” Ex parte Gutierrez, 337 S.W.3d 883, 892 (Tex. Crim.
App. 2011).  Based on the evidence presented at Baylor’s trial, we cannot say
that testing of the mask would do any more than muddy the waters because, as
recited above, the trial court found (based on the facts recited in this
court’s opinion on Baylor’s direct appeal):  (1) Baylor’s girlfriend had the
mask in her purse when it was seized six days later, and she testified that
only Baylor could have put it and the gun there; (2) the victim and attacker
were in separate cars so there was no reason for the victim’s DNA to be on the
mask; (3) one of Baylor’s acquaintances testified at trial that Baylor tried to
recruit his help in committing a robbery of a man from out of town and later
told him that he had tried to rob the man at a red light, emptying his gun into
the man’s vehicle until he thought the man was dead; and (4) when Baylor and
his girlfriend were stopped for a traffic violation six days later, police
found a gun and the mask in Baylor’s girlfriend’s purse, and ballistics tests
confirmed that the gun was the one used in the assault six days before.  See
id.

          On this evidence, Baylor
cannot show that there is “greater than a 50% chance that he would not have
been convicted if DNA testing provided exculpatory results.”  See id. at
899 (stating that the burden under article 64.03(a)(2)(A) is met if the record
shows that exculpatory DNA test results, excluding the defendant as the donor
of the material, would establish by a preponderance of the evidence that he
would not have been convicted); Swearingen v. State, 303 S.W.3d 728, 736
(Tex. Crim. App. 2010) (stating that a movant does not satisfy his burden under
article 64.03 if the record contains other substantial evidence of guilt
independent of that for which the movant seeks DNA testing); Prible v. State,
245 S.W.3d 466, 470 (Tex. Crim. App.) (stating that even if DNA testing showed
the presence of another person’s DNA, defendant failed to prove by a
preponderance of the evidence that he would not have been convicted given the
evidence presented at trial), cert. denied, 555 U.S. 833 (2008).  We
overrule Baylor’s sole point.

IV.  Conclusion

          Having overruled Baylor’s
sole point, we affirm the trial court’s judgment.

 

                                                                             PER
CURIAM

 

 

PANEL:  MCCOY, J.;
LIVINGSTON, C.J.; and GABRIEL, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  September 8, 2011









[1]See
Tex. R. App. P. 47.4.





[2]Our
opinion in Baylor’s direct appeal mentions that the stocking cap had holes cut
out of it, which would make it mask-like.  See Baylor, No.
02-99-00347-CR, slip op. at 11.





[3]Further,
under article 64.01, a convicted person seeking testing of biological evidence
must demonstrate the evidence was not previously subjected to DNA testing
because DNA testing was either not available or was not technologically capable
of providing probative results.  Tex. Code Crim. Proc. Ann. art. 64.01(b)(1); Dinkins,
84 S.W.3d at 641–42.