

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00308-CR

MUQTASID A. QADIR                                                                APPELLANT

V.

THE STATE OF TEXAS                                                                STATE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Muqtasid A. Qadir appeals the trial court's order denying his third motion for DNA testing of evidence related to his murder conviction.[2]  Because we conclude that the trial court did not err by denying the motion, we affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Code Crim. Proc. Ann. art. 64.05 (West 2006); see also Tex. Penal Code Ann. § 19.02(b) (West 2011).

## Background Facts

This is not appellant's first proceeding in this court. In affirming the trial court's denial of one of his prior motions for DNA testing, we provided details related to his conviction and life sentence for murdering his girlfriend and the litigation that has followed, explaining,

> The evidence showed that Qadir's girlfriend, Barbara Johnson, was stabbed to death and found by her grandfather, Joe McLane, at his house, where she resided. Johnson had been repeatedly stabbed in her shoulders, head, neck, hands, and arms. McLane called the police, who arrived shortly thereafter and secured the scene. McLane looked through the house but did not discover anything missing. Fort Worth Police Officer G.T. Baskin was one of the first officers on the scene, and in his search of the premises, he discovered a trail of blood leading away from the house to the north. Other officers gathered evidence, such as blood samples and fingerprints, at the scene.

> The day after the murder, Detective John Thornton questioned Qadir at his place of work, ostensibly because he had been dating Johnson. During the interview, Thornton became suspicious because Qadir's hand was cut; Detective Thornton invited Qadir down to the station. Police procured a warrant for samples of Qadir's blood, hair, and saliva and tests later revealed that the blood matched the blood type of some of the samples taken from different locations at the scene of the murder. Further DNA testing provided an even more conclusive match. A letter describing details of the crime that had not been released to the public was later received by the police. Qadir's fingerprint was on the envelope. Additional evidence was elicited that Qadir had recently threatened Johnson several times.

> Since his conviction, Qadir has filed several appeals to this court. In 1996, Qadir appealed his conviction directly to this court. This court affirmed his conviction. In 1999, Qadir appealed to this court attempting to reverse the trial court's denial of his motion to recuse the judge presiding over his post-conviction habeas corpus petition. In 2002, Qadir appealed to this court attempting to reverse an order denying his motion to recuse the same judge from presiding

2

over his request for DNA testing. In 2009, Qadir filed a petition for mandamus in this court, asking us to compel the presiding judge to rule on a motion for DNA testing that he asserted had been pending in the trial court for seven years without a ruling. In that opinion, we noted that the trial court had informed us that Qadir's case file had been closed for several years and that there was no pending motion for DNA testing.

*Qadir v. State*, No. 02-09-00276-CR, 2010 WL 3377794, at *1 (Tex. App.—Fort Worth Aug. 27, 2010, pet. ref'd) (mem. op., not designated for publication) (citations omitted).

In our 2010 opinion, we affirmed the trial court's order denying appellant's second motion for DNA testing. *Id.* at *1–3. We explained that the trial court had not erred by denying his motion to test several items—including broken glass jar fragments, a table knife, and a footprint from carpet—because DNA testing had been available at the time of appellant's trial to test the items in the manner that he had desired. *See id.* at *2.[3] We also noted that appellant had made collateral

---

[3] In 2010, the code of criminal procedure allowed for DNA testing of untested biological material only when testing was unavailable at the time of trial, was available but not capable of being probative, or was available but the material was not tested through no fault of the convicted person. *See Qadir*, 2010 WL 3377794, at *2; *see also Booker v. State*, No. 05-11-01141-CR, 2012 WL 6635227, at *4 (Tex. App.—Dallas Dec. 21, 2012, pet. ref'd) (not designated for publication). In 2011, the legislature relaxed chapter 64's requirements by allowing testing of untested biological material when it was simply "not previously subjected to DNA testing." *See* Act of May 20, 2011, 82nd Leg., R.S., ch. 366, § 1, 2011 Tex. Sess. Law Serv. 1015 (West) (current version at Tex. Code Crim. Proc. Ann. art. 64.01(b)(1) (West Supp. 2013)). Therefore, because the law currently does not require a reason why untested material was not tested, the standards and issues related to this appeal are different than the issues upon which we decided appellant's previous appeal. *See Qadir*, 2010 WL 3377794, at *2.

attacks on his murder conviction that we had no jurisdiction to resolve. *Id.* at *3 ("Although chapter 64 of the code of criminal procedure authorizes forensic DNA testing in cases in which the applicant meets the requirements enumerated in the statute, these amendments do not confer jurisdiction upon this court to entertain collateral attacks on the . . . conviction . . . .").

In September 2012, appellant filed a third motion for DNA testing. He again appeared to argue that broken glass jar fragments, a bloody table knife, and a bloody carpet section should be tested.[4] Appellant alleged that one forensic scientist had not tested all blood evidence and that the items tested by that scientist were inconclusive with respect to inculpating anyone. He also asserted that the record from his trial revealed the possibility of preexisting blood stains at the residence where the murder was committed and alleged that any such bloodstains matching his own should not have inculpated him. Thus, appellant argued that the State should have conducted a "time frame blood analysis."

The State filed a response to appellant's motion, conceding the existence of biological evidence related to his conviction but asking the trial court to deny the third motion because "evidence already subjected to forensic DNA testing [had] inculpated him." Specifically, the State contended that tests had revealed

---

[4]In an affidavit attached to the motion, appellant contended that DNA testing of these items would reveal that he was not connected "in the least . . . to this crime."

4

DNA profiles matching appellant's profile from blood samples on a bathroom wall, sink, and floor; a front door; a porch; an iron handle; and a sheet.[5] According to the State, the already-conducted tests established that the probability of an unrelated individual having the same profile as the profile from the blood found on those items was "approximately one in 1.6 billion Caucasians, one in 132 million Hispanics, and one in 360 [m]illion African-Americans."

While the State recognized that appellant was seeking to test items other than those previously tested, it contended,

> [G]iven that [appellant's] blood was found all over Barbara Johnson's murder scene, it is unlikely that newer testing of this evidence or any other evidence would provide results which would exonerate him.
>
> Thus, [appellant] does not meet the article 64.01 requirements for post-conviction forensic DNA testing, and his new request should be denied.
>
> . . . .
>
> Given the prior forensic DNA testing inculpating [appellant], there is no reasonable probability that further DNA testing would prove his innocence.

Finally, the State argued that evidence outside of DNA testing connected appellant to the murder, including that Johnson had been repeatedly stabbed, that appellant was known to carry a knife, that he had fresh injuries to his right hand when the police interviewed him on the day after the discovery of Johnson's body, that his fingerprints were on an envelope containing an anonymous letter

---

[5]The record contains a lab report that substantiates this contention.

that described the murder, and that he had threatened to kill Johnson shortly before her death.

On the same day that the State filed its response to appellant's motion, it also filed proposed findings of fact and conclusions of law. Approximately two weeks later, the trial court adopted those findings and conclusions and denied appellant's motion.[6] The court found and concluded as follows:

<u>FINDINGS OF FACT</u>

1. The defendant was convicted by a jury of the offense of murder . . . and sentenced . . . to confinement for life on February 26, 1996. . . .

. . . .

3. This Court denied the defendant's previous request for post-conviction forensic DNA testing because he did not meet the requirement of article 64.01 of the Code of Criminal Procedure. . . .

. . . .

5. Serologist Jamie King of the Fort Worth Police Department Crime Laboratory conducted forensic DNA testing on blood samples taken from:

- The bathroom wall, sink[,] and floor;
- The front door exterior;
- The porch;
- The iron handle; and
- A sheet. . . .

---

[6]We dismissed a previous appeal by appellant because at that time, the trial court had not yet denied appellant's third motion. *Qadir v. State*, No. 02-12-00558-CR, 2013 WL 1337944, at *1 (Tex. App.—Fort Worth Apr. 4, 2013, no pet.) (mem. op., not designated for publication).

6. Ms. King found that the defendant's DNA profile matched the DNA profile of the blood samples from the bathroom wall and sink, the front door exterior, the porch, and the sheet at all loci; and two bands of the blood sample from the iron handle at all loci. . . .

7. Ms. King found that the defendant's profile matched two of the bands of the blood sample from the bathroom floor at three loci. . . .

. . . .

9. The defendant cannot be excluded as the contributor of the blood found all over Barbara Johnson's murder scene.

10. It is unlikely that newer testing of evidence would provide exonerating results given that previously-tested DNA evidence showed the presence of the defendant's blood all over the murder scene[.]

11. The defendant does not meet the article 64.01 requirements for post-conviction forensic DNA testing.

. . . .

19. There is no reasonable probability that DNA testing of other evidence could exonerate the defendant given the previously-tested DNA evidence inculpating him and the other evidence connecting him to Barbara Johnson's murder.

20. The defendant does not meet the article 64.03 requirements for post-conviction forensic DNA testing.

CONCLUSIONS OF LAW

1. A convicted person may request forensic DNA testing of evidence not previously tested or evidence previously subjected to DNA testing where subjecting the evidence to newer testing techniques would provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test. . . .

2. The key issue in considering new requests regarding previously tested evidence is whether the type of DNA testing

7

available and used to test the evidence was capable of providing probative results. . . .

3. It is unlikely that newer DNA testing of previously-tested evidence or untested evidence would provide results which would exonerate the defendant. . . .

. . . .

5. A convicted person must establish that there exists a reasonable probability that exculpatory DNA testing of the evidence for which he seeks testing would prove his innocence. . . .

6. There is no reasonable probability that DNA testing of other evidence could exonerate the defendant given the previously-tested DNA evidence inculpating him and the other evidence connecting him to Barbara Johnson's murder.

Appellant brought this appeal.

### The Denial of Appellant's Motion

We review a trial court's denial of a motion for DNA testing of biological material under a bifurcated standard. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We afford almost total deference to a trial court's determination of issues of historical fact, but we review de novo the trial court's applications of the law to facts as long as those applications do not turn on credibility and demeanor of witnesses.[7] *Id.*; *see Harbour v. State*, No. 02-10-00558-CR, 2011 WL 3795256, at *1 (Tex. App.—Fort Worth Aug. 25, 2011, no pet.) (mem. op., not designated for publication).

---

[7]The trial court did not receive live testimony on appellant's third motion for DNA testing; we do not have a reporter's record related to the motion.

Chapter 64 of the code of criminal procedure allows a convicted person to file a motion for forensic DNA testing of evidence containing biological material. *See* Tex. Code Crim. Proc. Ann. art. 64.01(a)(1), (a-1); *State v. Swearingen*, No. AP-77020, 2014 WL 440910, at *3 (Tex. Crim. App. Feb. 5, 2014). A motion under article 64.01 must be accompanied by an affidavit that is sworn to by the convicted person and that contains facts in support of the motion. Tex. Code Crim. Proc. Ann. art. 64.01(a-1). The biological material to be tested must have either not been previously tested, or if previously tested, the convicted person must show that "newer testing techniques . . . provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *Id.* art. 64.01(b); *see Swearingen*, 2014 WL 440910, at *3.

The trial court may order DNA testing of biological material only when the convicted person proves by a preponderance of the evidence that a conviction would not have occurred if exculpatory results had been obtained through testing of the material at issue. Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (West Supp. 2013); *Swearingen*, 2014 WL 440910, at *3, *5 ("In order to be entitled to DNA testing, the [movant] must show by a preponderance of the evidence (51%) that he would not have been convicted if the exculpatory results were available at trial."); *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011). Evidence that could establish the possibility of another DNA contributor to the scene of a crime does not meet this requirement when a "mountain of evidence" supports the defendant's guilt. *See Swearingen*, 2014 WL 440910, at *5. It is

9

not sufficient for a movant under chapter 64 to establish that a new DNA test result would merely "muddy the waters" on the validity of a conviction. *Hill v. State*, No. 02-11-00398-CR, 2012 WL 4010460, at \*12 (Tex. App.—Fort Worth Sept. 13, 2012, no pet.) (mem. op., not designated for publication) (explaining that the "mere presence of a third party's DNA at a crime scene does not establish a reasonable probability of an appellant's innocence when it does not explain away all of the other evidence pointing to his guilt").

Liberally construing appellant's pro se arguments in the trial court and this court together, it appears to us that he seeks testing of two groups of evidence. The first group comprises evidence that has not been tested and includes broken glass jar fragments, a table knife, and a carpet section containing a bloody footprint. Concerning these items, we agree with the State's argument and the trial court's finding that appellant has not met his burden under article 64.03(a)(2)(A).

In other words, given the substantial evidence supporting appellant's conviction—including the presence of his blood on many items at the murder scene,[8] the appearance of his fingerprint on an envelope[9] containing a letter that

---

[8]Appellant does not deny this fact. Instead, he contends that the evidence at his trial supported an inference that he bled in the house before the murder was committed.

[9]Appellant appears to contest this fact, alleging that his fingerprint was "planted." But the weight of this evidence may not be relitigated through a motion filed under chapter 64. *See Qadir*, 2010 WL 3377794, at \*3; *In re Morton*, 326 S.W.3d 634, 647 (Tex. App.—Austin 2010, no pet.).

described the murder, and evidence of his repeated threats to his victim before her death—we conclude that he has not shown by a preponderance of the evidence that he would not have been convicted if the jar fragments, knife, and footprint contain DNA profiles that do not match his. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A); *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010) ("Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing."); *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App.) (affirming a trial court's denial of postconviction DNA testing because "even if the evidence was retested and determined to contain another person's DNA in addition to [the defendant's] DNA, it would not establish by [a] preponderance of the evidence that [the defendant] would not have been convicted"), *cert. denied*, 555 U.S. 833 (2008); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) ("The presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence."); *see also Baylor v. State*, No. 02-10-00561-CR, 2011 WL 4008026, at \*3 (Tex. App.—Fort Worth Sept. 8, 2011, no pet.) (mem. op., not designated for publication) (relying on evidence presented at the defendant's trial and recited in an earlier appellate opinion to affirm a trial court's denial of his later motion for DNA testing). We hold that the trial court did not err by denying appellant's motion to allow testing of glass jar fragments, a table knife, and a carpet section containing a bloody footprint.

11

The second group of evidence includes items that were already tested. Appellant appears to argue that these items should be retested to prove that his blood appeared at the murder scene before the murder occurred. He asks for a "Time Frame Blood Analysis."

To obtain testing of evidence that has already been tested, the movant must show that the evidence "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." Tex. Code Crim. Proc. Ann. art. 64.01(b)(2). We agree with the trial court's finding and conclusion that appellant did not establish this requirement under article 64.01. In his motion, appellant alleged that a serologist had generally testified to "there being a way to tell how old blood is, but nothing specific." He also alleged that the record from his trial revealed the "possibility of 'preexisting blood stains'" before the murder occurred. With regard to proving such preexisting blood stains, appellant alleged, "[T]oday in our society we have much advanced technology in the Scientific Discovery of Evidence . . . to the point that we are able to determine . . . how old bones are of our forefathers and prehistoric animals . . . ."

These statements do not satisfy article 64.01's requirement. *See id.* That is, they do not prove that evidence already tested can now be tested again with a newer technique that will be probative on the issue of whether appellant's blood appeared on items at the murder scene before the crime occurred, as he alleges. *Cf. Swearingen,* 303 S.W.3d at 735 ("[A]ppellant has not shown a reasonable

12

likelihood that results [from a newer testing technique] would be more accurate or probative."); *Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008) (holding that a defendant was not entitled to retest blood stains on a sock because she failed to establish that newer testing results would be more probative than results of previous testing); *Marks v. State*, No. 02-09-00144-CR, 2010 WL 598459, at *1 (Tex. App.—Fort Worth Feb. 18, 2010, no pet.) (mem. op., not designated for publication) ("[The movant] failed to allege, much less prove, that [the testing company] will utilize 'newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.' Thus, he did not meet the requirements of article 64.01(b)(2)."). Therefore, we conclude that the trial court did not err by denying appellant's motion to allow testing of material that had already been tested.

Next, many of appellant's arguments in the trial court and on appeal do not directly concern the trial court's denial of his third motion for DNA testing but instead focus on issues related to his trial or actions that preceded it.[10] For example, in his motion, appellant stated that he was challenging the "STATE/Prosecution Expert [Witnesses'] failures to execute a plan for carrying out Scientific Study and particular Scientific Studies, Use of Improper Procedures, failure to Re-test and Reextract test results, and the 'Untested' and

---

[10]We also note that many of the facts included within appellant's briefs in this court are unsupported by the concise record filed in this appeal.

13

'Unexamined' DNA Blood samples of Evidence containing biological material . . . ." In his appellate brief, appellant argues about the alleged ineffectiveness of his trial counsel and states that the "evidence as a whole establishes . . . the guilt of [someone] other than himself." He also phrases his first issue as "Whether The State's Own Expert Witnesses Failed To Execute A Plan For Carrying Out Scientific Study Of The Evidence Containing Biological Material In The Appellant's Case, Or Not?" To the extent that appellant attempts to collaterally attack his murder conviction through contentions like these, we overrule all of those arguments. *See Qadir*, 2010 WL 3377794, at *3; *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd), *cert. denied*, 552 U.S. 1117 (2008).

Finally, in his second issue, appellant argues that the legislature's amendment of article 64.01 in 2011, as described in footnote three above, "disadvantaged" his third motion for DNA testing and violated his constitutional right against ex post facto laws.[11] As explained above, the 2011 change to article 64.01 relaxed the requirements for seeking DNA testing, benefiting movants like appellant. Whereas appellant's possible "fault" in not seeking testing before his trial once may have precluded later testing, fault no longer factors into section 64.01's qualifications for testing. *See* Act of May 20, 2011, 82nd Leg., R.S., ch. 366, § 1, 2011 Tex. Sess. Law Serv. 1015 (West); *see also*

---

[11]*See* U.S. Const. art. I, § 10; Tex. Const. art. 1, § 16.

*Patt v. State*, No. 10-11-00318-CR, 2012 WL 4040736, at *1 (Tex. App.—Waco Sept. 13, 2012, no pet.) (mem. op., not designated for publication) (explaining that because an appellant filed a motion for DNA testing before the effective date of the 2011 amendment, he was required to show no fault in the lack of prior DNA testing). Thus, because appellant could only benefit from the relaxation of article 64.01's requirements of motions requesting DNA testing, we hold that he was not "disadvantaged" and that his ex post facto argument must be rejected. *See generally Carmell v. Texas*, 529 U.S. 513, 522–23, 120 S. Ct. 1620, 1627–28 (2000) (explaining that prohibited ex post facto laws harm defendants by creating or increasing criminal responsibility for an act after the act has been committed).

For all of these reasons, we hold that the trial court did not err by denying appellant's third motion for DNA testing, and we overrule his two issues, along with the subsidiary arguments contained within them.

## Conclusion

Having overruled both of appellant's issues, we affirm the trial court's order denying his third motion for DNA testing.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 10, 2014